J-S73006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENNIS M. ROBINSON | : | |
| | : | |
| Appellant | : | No. 711 MDA 2019 |

Appeal from the PCRA Order Dated April 8, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0000549-2010

BEFORE:  SHOGAN, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 27, 2020**

Appellant, Dennis M. Robinson appeals from the order dated April 8, 2019, denying his petition for relief pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  In this timely appeal, Appellant asserts that the PCRA court erred in finding that the Commonwealth did not violate **Brady v. Maryland**, 373 U.S. 83 (1963), and raises three allegations of ineffective assistance of counsel.  After careful review, we affirm.

The PCRA court related the relevant facts and procedural history of this case, as follows:

> [Appellant] was found guilty of criminal homicide and firearms not to be carried without a license following a four-day jury trial [from October 3, 2011, through October 6, 2011] before the Honorable Todd Hoover (now deceased).  [On October 11, 2011, Appellant] was sentenced to life imprisonment for the homicide, and a concurrent term of two to five years for firearms not to be carried without a license. Bryan McQuillan, Esq., represented [Appellant] at trial, sentencing, and on direct appeal.

* * *

According to the trial testimony and as set forth in the trial court opinion, Appellant's friend, Eric Greene [("Greene")], testified that in the early morning hours of October 11, 2009, he and [Appellant] left a party in a car. During the ride home, they saw Justin Williams [("Williams")] walking on Second Street in Steelton and exited the vehicle. At that point, Greene witnessed [Appellant] point a .38 caliber revolver towards Williams, hit Williams with the gun, and [run] away. Greene and [Appellant] then drove to [the Crown Chicken] restaurant. Around 3:00 a.m., Green[e] and [Appellant] were dropped off at the restaurant, which was an eight to ten minute drive from their previous location in Steelton. While there, the two encountered Jermaine Dawson, the homicide victim in this case. A woman named Talitha Davis knew Dawson as the "movie guy," and referred to him as such. She knew him because she previously bought some CDs and DVDs from Dawson.[3] Dawson asked Greene and [Appellant] if they had seen his big bag of DVDs and offered $20 in return for his bag. Greene observed [Appellant] accept $20 from Dawson and state to Dawson that he would retrieve the bag. Green[e] was with [Appellant] all night and [Appellant] never said anything about knowing the location of Dawson's bag. Surveillance video at 2:47 a.m. showed [Appellant], Greene, and Dawson at the restaurant.

> [3] Talitha Davis testified that in the early morning hours of October 11, 2009, she went to a restaurant, noticed a pocketbook, and decided to take it home. After arriving home and sorting through the bag, she realized that it belonged to the "movie guy," as it contained movies [and] music. Davis attempted to return the bag to him but learned that he had been shot.

Greene later testified that after he and [Appellant] left the restaurant, Dawson followed behind and repeated[ly] asked [Appellant] for the return of the bag or his money. An argument ensued.

> Green[e] observed [Appellant] pull out a .38 revolver, which was the same revolver [Appellant] pulled out in Steelton less than an hour earlier, and say to Dawson ["]stop following me before I spark [sic] you."

- 2 -

> [Appellant] and Greene wrestled for the gun and then [Appellant] shot Dawson five to six times. After the shooting, [Appellant] and Greene ran off and separated ways.
>
> Dawson died of multiple gunshot wounds. [Appellant's] defense theory at trial was that it was Eric Greene who shot and killed Dawson. The Commonwealth heard testimony from Greene, Talitha Davis, and other witnesses who lived nearby and heard the shooting. The Commonwealth also called Williams as a hostile witness. Williams positively identified [Appellant] as the person who tried to rob him and struck him in the head with a revolver. [Appellant] presented no witnesses.

PCRA Court Opinion, 4/8/19, at 1–3 (record references and some footnotes omitted).

Appellant's judgment of sentence was affirmed by this Court on November 7, 2012. On April 16, 2013, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal, and on January 29, 2014, Appellant filed a timely *pro se* PCRA petition. William Shreve, Esq., was appointed to represent Appellant. Attorney Shreve filed a motion to withdraw, and on April 2, 2015, Roy L. Galloway, Esq., entered his appearance. An amended PCRA petition was filed on August 17, 2015, and a second-amended petition was filed on October 7, 2015, to correct a procedural deficiency in the amended petition. The PCRA court conducted hearings on Appellant's second amended petition on February 21, 2017, July 7, 2017, December 12, 2017, and October 8, 2018. On April 8, 2019, the PCRA court denied post-conviction

relief, and this appeal followed. Appellant and the PCRA court complied with Pa.R.A.P. 1925.[1]

Appellant raises the following issues on appeal:

A. Whether the trial Court erred in not finding a **Brady** violation for the failure to turn over information concerning the implied agreement to "help" Eric Green[e] with his criminal charges in exchange for his testimony against the Appellant?

B. Whether the trial Court erred in determining that trial counsel was not ineffective for failing to investigate and call available character witnesses on behalf of the Appellant at trial?

C. Whether the trial Court erred when it determined that the trial counsel was not ineffective for failing to request an accomplice / corrupt and polluted source instruction at trial?

D. Whether the trial Court erred when it determined that the trial counsel was not ineffective for failing to request a *crimen falsi* instruction at trial?

Appellant's Brief at 3.

In reviewing an order denying PCRA relief, our well-settled standard of review is to ascertain "whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings

---

[1] On April 8, 2019, the PCRA court filed a memorandum opinion outlining its reasons for its order dismissing Appellant's petition for PCRA relief. Upon the PCRA court's subsequent receipt of Appellant's 1925(b) Statement of Matters Complained of on Appeal, on July 25, 2019, the PCRA court issued a Memorandum Statement in Lieu of Opinion directing this Court to "the memorandum opinion accompanying this court's April 8, 2019 order." Memorandum Statement in Lieu of Opinion, 7/25/19, at unnumbered 1.

in the certified record." *Commonwealth v. Barndt*, 74 A.3d 185, 191–192 (Pa. Super. 2013) (internal quotations and citations omitted).

Appellant's first claim is that the PCRA court erred in finding that the Commonwealth did not commit a *Brady* violation.[2] The U.S. Supreme Court has held that "suppression by the prosecution of evidence favorable to the accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 at 87. To prove a *Brady* violation, it must be shown that: "(1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant." *Commonwealth v. Busanet*, 54 A.3d 35, 48 (Pa. 2012) (quotation omitted).

The basis of Appellant's *Brady* claim is that the Commonwealth failed to disclose that prior to Appellant's trial, the Commonwealth entered into an agreement with Greene, the chief prosecution witness, that Greene would receive leniency regarding his outstanding felony charges in exchange for his testimony against Appellant. Appellant avers that he became aware of the agreement when his mother received a letter from Greene referencing Deputy District Attorney Johnny Baer's promises to him concerning those charges.

---

[2] We note that Appellant's *Brady* claim alleges a violation of his due process rights and does not assert that counsel was ineffective for failure to pursue this claim. Appellant's Brief at 11.

Before we discuss the possible merit of Appellant's **Brady** claim, we must determine if Appellant has waived appellate review of this issue. To be eligible for relief under the PCRA, a petitioner must establish that his allegations have not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). An allegation is deemed waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, [or] on appeal. . . ." 42 Pa.C.S. § 9544(b).

A **Brady** claim may be subject to waiver if it could have been raised in an earlier proceeding. **Commonwealth v. Roney**, 79 A.3d 595, 609 (Pa. 2013) (**Brady** claim waived when issue could have been raised at trial or on direct appeal); **See also Commonwealth v. Morris**, 822 A.2d 684, 696 (Pa. 2003) (rejecting a **Brady** claim where the appellant did not make clear that the information was not available at trial or that counsel could not have uncovered it with reasonable diligence).

In this matter, Appellant does not clarify when he became aware of the facts supporting his **Brady** claim.[3] Appellant's *pro se* PCRA petition avers that a **Brady** violation occurred when the prosecution failed to turn over exculpatory evidence pertaining to Greene's plea deal in exchange for his trial testimony against Appellant. Petition for Post-Conviction Collateral Relief,

---

[3] In his brief, Appellant for the first time represents that Greene's letter was a "recent post-appellate disclosure" but does not offer any facts supporting this characterization. Appellant's Brief at 11.

1/29/14, at 2. Appellant does not describe the exculpatory evidence or identify when he knew of its existence. In both counseled amended petitions, Appellant offers only vague and conflicting information concerning the timing of the Greene disclosure. Appellant initially asserts that he was not made aware of the offer of leniency to Greene "[p]rior to the trial," *see* Amended PCRA Petition, 8/17/15, at unnumbered 6; Second Amended PCRA Petition, 10/7/15, at unnumbered 6, then later claims that his mother received the Greene letter "after [Appellant] was convicted." *See* Amended PCRA Petition, 8/17/15, at unnumbered 15; Second Amended PCRA Petition, 10/7/15, at unnumbered 15–16. In his brief in support of his PCRA petition, Appellant repeats that Greene wrote to Appellant's mother on an unspecified date "following [Appellant's] conviction." Memorandum of Law in Support of PCRA Petition, 11/9/18, at unnumbered 9. The letter itself, a copy of which is attached as an exhibit to both the amended petition and second amended petition, is undated.[4] *See* Amended PCRA Petition, 8/17/15, Exhibit A; Second Amended PCRA Petition, 10/7/15, Exhibit A. Finally, at the PCRA hearing held on October 8, 2018, Appellant did not testify to when he became aware of the Greene letter. N.T., 10/8/18, at 36–38. Although Greene was called as a

---

[4]  On November 22, 2017, Appellant filed a "Motion for DNA Testing of Envelope Which Contained Letter Allegedly From Eric Greene." In this motion, Appellant claims that the envelope, attached as Exhibit A, includes the date that the envelope was mailed, but he does not identify that date. Motion, 11/22/17, at unnumbered 3. There is no discernable date on the copy of the envelope attached as Exhibit A.

witness at this hearing, he invoked his Fifth Amendment right and elected not to testify. *Id.* at 4–5.

As the above explanation reveals, the only consistent statement regarding the date of the Greene letter is that it was received sometime after Appellant's conviction. Therefore, it follows that the letter might have been disclosed during Appellant's direct appeal period and it was incumbent upon Appellant to demonstrate otherwise. Because Appellant failed to indicate when he became aware of the alleged *Brady* violation, the claim appears to have been waived*. Roney*, 79 A.3d at 609. However, even if we were to consider the substance of the claim, we would conclude that it lacks merit.

In reviewing the alleged *Brady* violation, the PCRA court summarized the germane facts as follows:

> [Appellant's] third claim is that the Commonwealth committed a *Brady* violation when it failed to disclose an alleged agreement with Greene prior to [Appellant's] trial, specifically, that Greene would receive leniency for his felony dockets in exchange for his testimony against [Appellant]. [Appellant] asserts that there was a letter allegedly written by Greene claiming that "Berry" (whom [Appellant] argues is Chief Deputy Attorney Johnny Baer) made promises to him before trial in exchange for his testimony, and that Attorney Baer followed through on such promises after trial.
>
> At trial, Greene testified that he had not received promises of benefits from the District Attorney prior to [Appellant's] trial in exchange for his testimony. At the PCRA hearing held on December 12, 2017, Attorney Baer testified that there was absolutely no agreement between the District Attorney and Greene ahead of [Appellant's] jury trial regarding a plea deal in exchange for Greene's testimony. Attorney Baer indicated that Greene was reluctant to testify, and had outstanding charges, including a firearm violation.

- 8 -

Attorney Lysaght:[5] Now, given his reluctance to testify, as you intimated, did you or anyone from the District Attorney's Office try to encourage his testimony by offering him a plea deal in return for his testimony before trial? Such that, hey, if you testify as you've told us that you're going to implicate [Appellant] that we'll cut you a break on your outstanding charges?

ATTORNEY BAER: No. We had no specific conversation with the resolution of his charges.

ATTORNEY LYSAGHT: In your memory did he ask you for a deal?

ATTORNEY BAER: He did not.... And let me give you a complete answer to that. They came up. I mean, naturally any time any witness has criminal charges and they're preparing to testify, that's going ... to come up. And it usually comes up in the context of what's going to happen to my charges? And I think that that was his line of inquiry. What's going - what can you do about this more than asking more specifically what's going to happen.

ATTORNEY LYSAGHT: And did you respond in any way to that question?

ATTORNEY BAER: Yeah, I respond to every inquiry I get along the way . . . the same way, which is we'll talk about it when it[']s done.

ATTORNEY LYSAGHT: Okay. So, again, to beat a dead horse, your testimony is that you did not enter into a plea deal for his testimony ahead of [Appellant's] trial?

ATTORNEY BAER: Correct. There was no agreement. There was no specific discussion about his-about the resolution of his charges. His reluctance

---

[5] Ryan H. Lysaght, Dauphin County Deputy District Attorney, represented the Commonwealth at the PCRA hearing.

really had nothing to do with the pending criminal charges. His reluctance was solely being concerned about being a witness in a murder trial.

ATTORNEY LYSAGHT: Being a snitch?

ATTORNEY BAER: Being a snitch. His reputation and whatever allegiance he still felt toward [Appellant].

[Appellant] claims that the letter allegedly written by Greene states that he expected leniency and did receive leniency. At the October 8, 2018 PCRA hearing, [Appellant] called Khody Detwiler, a handwriting expert/or forensic document examiner, who testified that, to a reasonable degree of professional certainty, Greene was the author of the letter. When called to testify regarding the letter that he allegedly authored, Greene invoked his Fifth Amendment right against self-incrimination, which [Appellant] accepted without objection. [Appellant] claims that it is not known what was specifically discussed between Greene and the DA's office, but there is "clear evidence" that whatever was discussed led Greene to believe he would receive leniency for his cases, which he actually received.

Based on the trial testimony and PCRA hearing testimony, a *Brady* violation has not been established. The record simply belies this claim, as there is no evidence that a deal had been made. In fact, the testimony of both Greene and Attorney Baer directly contradict this assertion.

PCRA Court Opinion, 4/8/19, at 6–8 (footnote and record references omitted).

Appellant argues that the Greene letter established that "the District Attorney's Office had, in actuality, promised [Greene] favorable treatment before he testified." Appellant's Brief at 11. This underlying premise is flawed. The relevant sentences in the **undated** Greene letter read: "Point blank simple. Berry promised me a few things and kept his word on his promises." Second Amended PCRA Petition, 10/7/15, Exhibit A. There is no mention of

the timing of the alleged promises; therefore, Appellant's assertion that they were offered prior to Greene's trial testimony against Appellant has no evidentiary support. Second, the only indication that the "Berry" referenced in the letter was in fact Deputy District Attorney Baer was elicited from Appellant's testimony at the PCRA hearing:

> Q. Did you actually see the actual letter that was allegedly written by Mr. Green[e]?

> A. Yes.

> Q. And in that letter, does it purport that Mr. Green[e] was promised something in exchange for his testimony?

> A. Yes. It says that Berry—which we had a—we got into a spat about that a few hearings ago that we were going to refer to John Baer—promised me something, came through as a promise. That's what I was mentioning when I was stating Johnny Baer testified to him telling Mr. Green[e] he'll get back to his pending matters, which he ultimately did after my conviction by relaying his cooperation to his prosecuting attorney from the same office.

N.T. (PCRA Hearing), 10/8/18, at 38. As noted by the PCRA court, Appellant argued that "Berry" is Chief Deputy Attorney Johnny Baer, however, there was no corroborating evidence in the record clarifying "Berry's" identity.

Likewise, Appellant's assertion that the testimonial evidence of Attorney Baer confirms the existence of an undisclosed implied agreement for leniency is unsubstantiated. Rather, upon review, we conclude the record supports the PCRA court's finding that Greene was not promised leniency in exchange for his testimony against Appellant. *See*, N.T. (Trial) 10/5/11, at 359 (wherein Greene testifies that he had not cut a deal for reduced charges

with the Commonwealth, but was hoping for some help with his outstanding charges); N.T. (PCRA) 12/12/17, at 38-40 (where Deputy District Attorney Baer states that there was no pretrial agreement promising Greene leniency in exchange for Greene's testimony against Appellant).

Appellant next alleges issues of ineffectiveness of trial counsel. To obtain relief on a claim of ineffectiveness of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). In Pennsylvania, we have applied the *Strickland* test by requiring that a petitioner establish that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Solano*, 129 A.3d 1156, 1162 (Pa. 2015) (quoting *Commonwealth v. Keaton,* 45 A.3d 1050, 1060 (Pa. 2012) (internal citations omitted)). If a claim fails under any required element of the *Strickland* test, the court may dismiss the claim on that basis. *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). Counsel is presumed to be effective, and the burden of demonstrating ineffectiveness rests on the appellant. *Id.*

Appellant first claims that counsel was ineffective for failing to investigate, interview, and present character witnesses on his behalf.

Appellant's Brief at 20. To succeed on an ineffectiveness claim for the failure

to call a potential witness:

> a petitioner satisfies the performance and prejudice requirements of the [ineffective assistance of counsel] test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

> *Commonwealth v. Sneed*, 616 Pa. 1, 45 A.3d 1096, 1108-09 (2012) (citations omitted)

> Prejudice in this respect requires the petitioner to "show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." Therefore, the petitioner's burden is to show that testimony provided by the uncalled witnesses "would have been helpful to the defense."

> *Commonwealth v. Williams*, 636 Pa. 105, 141 A.3d 440, 460 (2016) (quotations and citation omitted).

*Commonwealth v. Selenski*, ___ A.3d ___, ___, 2020 PA Super 22, *4–5

(Pa. Super. filed February 4, 2020).

The trial court resolved this issue, as follows:

> Attorney [William] Shreve, [Appellant's] prior PCRA counsel, testified that [Appellant] indicated to him that he did not present potential character witnesses to his trial attorney, Mr. McQuillan. Attorney McQuillan testified at a later hearing that while he did not recall a specific conversation with [Appellant], it is normally his practice to discuss calling character witnesses prior to trial. However, he stated that [Appellant] never presented him with "person A, B, or C" that he would like to call as a character witness. Attorney McQuillan also testified that he did not believe it was a plausible strategy to call character witnesses. Specifically, [Appellant] had robbed someone (Justin Williams) by force earlier in the day in question; he pistol-whipped the victim. [Appellant's]

violent and dishonest nature had been established and counsel had no basis upon which to introduce good character evidence.

At the December 12, 2017 PCRA hearing, [Appellant] called Angela Doyle, Bernadette Wyatt, and Linwood Johnson; each of them offered testimony as to [Appellant's] peaceful, nonviolent nature. Additionally, they indicated that they would have been available to testify had they been asked. [Appellant] admitted at the PCRA hearing that he did not provide his trial counsel with specific names and addresses of character witnesses, but claimed that he provided Attorney McQuillan with his mother's address because the witnesses that wanted to testify lived on or near her street.

Despite the testimony of the character witnesses at the PCRA hearing, based on the evidence of record, [Appellant] did not inform defense counsel of the existence of witnesses to testify as to his good character. Trial counsel did not see it as a plausible strategy and, even had he been informed of such witnesses, the outcome of the case would not have been altered in light of the trial testimony.

PCRA Court Opinion, 4/8/19, at 9–10 (record references omitted).

On appeal, Appellant challenges the PCRA court's finding that Appellant and trial counsel did not discuss the topic of character witnesses. In support, Appellant references his uncorroborated and imprecise PCRA hearing testimony referring to certain "request slips and letters sent to counsel . . . and were actually possessed on the stand by the Appellant." Appellant's Brief at 20. However, no evidence of these letters or slips indicating Appellant's communication with his trial counsel about potential character witnesses was introduced at the PCRA hearing. Additionally, Appellant's prior pleading belies his PCRA testimony that he informed counsel of the availability of character witnesses. **See** Petitioner's Response to

Counsel's Motion to Withdraw, 10/23/14, at 1 ("[C]ounsel had failed to inform him of his right to call character witnesses and that, if he had been informed of this right, he would have given trial counsel the names of several witnesses who would have been available to testify that he had a good reputation . . . ."). Attorney Shreve's testimony at the PCRA hearing confirmed that Appellant and trial counsel did not discuss character witnesses, specifically, "[Appellant] indicated to me that he did not present character witnesses to his trial attorney, Mr. McQuillan." N.T. (PCRA), 2/21/17, at 5. Therefore, the record supports the trial court's finding that Appellant did not inform trial counsel of the existence of witnesses to testify as to his peaceful nature and we will not disturb this finding on review.

Furthermore, assuming *arguendo* that Appellant could establish that trial counsel was aware of availability of character witnesses, we cannot conclude, as Appellant maintains, that counsel's failure to present this testimony was prejudicial because there is not "a reasonable probability that the outcome of the proceedings would have been different." **Commonwealth v. Hull,** 982 A.2d 1020, 1022–1023 (Pa. Super. 2009) (quoting **Commonwealth v. Harris**, 972 A.2d 1196, 1203 (Pa. Super. 2009)). Trial counsel explained that presenting character witnesses would not have been "a plausible defense strategy" in light of the testimony that Appellant, on the same day as Dawson's murder, had robbed another individual by force. N.T. (PCRA), 7/7/17, at 8–9. In addition, these proposed witnesses would not have

negated the substantial evidence implicating Appellant in both the pistol-whipping and robbery of Williams and the shooting of Dawson a few hours later. For this reason, we conclude that the PCRA court did nor err in determining that the outcome of the trial would be unchanged if counsel presented character witnesses.

Appellant's next allegation of ineffectiveness concerns trial counsel's failure to request an accomplice liability instruction. Appellant's theory is that the fact that the video from the Crown Chicken's surveillance camera shows both Appellant and Greene and, because there was a subsequent shooting near the restaurant, "a strong inference could be made . . . that [Appellant] and [Greene] were together and may have been involved with criminal activity." Appellant's Brief at 25.

> It is well settled that whether to request additional points for charge is one of the tactical decisions "within the exclusive province of counsel." *Commonwealth v. Sullivan*, 450 Pa. 273, 299 A.2d 608, 610 (1973), *cert. denied,* 412 U.S. 923, 93 S.Ct. 2745, 37 L.Ed.2d 150 (1973). We should not invade that province and declare counsel ineffective if any reasonable basis for counsel's decision existed at the time of trial. *Commonwealth v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Rather, we should scrupulously follow the presumption that attorneys act in the interests of their clients, and insist that Appellant meet his burden of proving that his attorneys had no reasonable basis for their action. *See, e.g., Commonwealth v. Watson*, 523 Pa. 51, 65, 565 A.2d 132, 139 (1989).

*Commonwealth v. Derk*, 553 Pa. 325, 719 A.2d 262, 265 (1998).

- 16 -

> [T]he standard charge for accomplice testimony [is] commonly referred to as the corrupt and polluted source charge. ["I]n any case where an accomplice implicates the defendant, the judge should tell the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution." ... "If the evidence is sufficient to present a jury question with respect to whether the prosecution's witness was an accomplice, the defendant is entitled to an instruction as to the weight to be given to that witness's testimony."

**Commonwealth v. Smith**, 609 Pa. 605, 17 A.3d 873, 906 (2011) (citations omitted). "The 'corrupt source' charge in particular is designed specifically to address situations where one accomplice testifies against the other to obtain favorable treatment. It directs the jury to view the testimony of an accomplice with disfavor and accept it only with care and caution." **Id.**

**Commonwealth v. Lawrence**, 165 A.3d 34, 44–45 (Pa. Super. 2017)

(footnote omitted).

The trial court dismissed this allegation of ineffectiveness on the following basis:

> [Appellant's] trial counsel, Attorney McQuillan, testified at the PCRA hearing held on July 7, 2017. He confirmed that he did not argue an accomplice theory because the theory and defense strategy was that Greene acted alone. There can be no dispute that Greene was a critical witness who incriminated [Appellant]. However, seeking such an instruction would have directly conflicted with counsel's trial strategy. The accomplice instruction would have led to [Appellant's] own culpability instead of [extricating] him from criminal conduct. [Appellant's] theory of the case, which was argued throughout the trial, was that Greene was the lone shooter. Giving such an instruction would have, at the very least, confused the jury by sending mixed messages. There was no evidence presented at trial that [Appellant] and Greene were accomplices. Consequently, it cannot be said that counsel had no reasonable basis for refraining from requesting this instruction. Rather, this decision was in line with counsel's strategy and for any hope of an acquittal.

PCRA Court Opinion, 4/8/19, at 4–5 (record references omitted).

As the PCRA court observed, Appellant's trial defense was that Greene, and not Appellant, was the shooter. Thus, the PCRA court's legal conclusion that requesting a corrupt source instruction would be in direct conflict with Appellant's defense theory is legally sustainable.

Apparently recognizing the futility of an argument that a polluted source instruction would undermine the defense tactic in this case to identify Greene as the shooter, Appellant now claims that the defense theory was that "Greene might have been testifying to avoid being charged with murder." Appellant's Brief at 26. We do not view this characterization as undermining the conclusion that a polluted source instruction would contradict the defense strategy and confuse the jury. To the contrary, the information that Greene was concerned that he might be charged with murder in this matter, *see* N.T. (Trial), 10/5/11, at 368 (wherein Greene testified that he initially lied to the police regarding knowledge of Dawson's shooting because "I was scared I might get charged with something I had nothing to do with") actually strengthens the theory that Greene was the shooter.

In any event, Pennsylvania courts have recognized a reasonable strategy in trial counsel's decision to forego requesting a corrupt source charge where the instruction is inconsistent with an assertion that the defendant has not committed the crime in question. *See Commonwealth v. Karabin*, 426 A.2d 91, 93 (Pa. 1981) (reasonable tactic to forego corrupt

source instruction against girlfriend witness when defendant advanced innocence defense and alleged that jealousy motivated girlfriend to testify falsely), and ***Commonwealth v. Williams***, 732 A.2d 1167, 1182 (Pa. 1999) (1981) (finding trial counsel not ineffective for failing to request accomplice instruction where it would contradict defense that defendant was not present at the scene of or involved in the killing). We likewise recognize a reasonable basis for trial counsel's strategy to deny an accomplice relationship between Appellant and Greene. Accordingly, the PCRA court correctly denied Appellant relief on this claim.

Appellant's final claim is that trial counsel was ineffective for failing to request a *crimen falsi* jury instruction regarding the prior criminal convictions of witnesses Williams and Greene. The trial court concluded that this ineffectiveness allegation was without merit based on the following rationale:

> Where the Commonwealth preemptively raises the issue of a witness' *crimen falsi*, there is no obvious benefit to counsel raising it again. *See Commonwealth v. Treadwell*, 911 A.2d 987, 992 (Pa. Super. 2006) (noting that the Commonwealth also raised the fact that the witness was on probation for a non *crimen falsi* conviction and faced pending drug related charges at trial, and counsel was not ineffective for failing to raise the point again). Greene's *crimen falsi* convictions were emphasized to the jury many times, including during argument and cross-examination. [Appellant] highlighted the fact that Greene openly admitted to lying to the detectives, that his oath meant nothing, that he had open criminal charges, and wanted a deal for his testimony. However, the video from the restaurant on the night in question corroborated Greene's testimony despite his dishonest nature. It cannot be established that the result would be different had the instruction been included. The jury was advised of the criminal history involving the *crimen falsi*, and the [c]ourt instructed the jury to weigh the evidence and consider credibility.

- 19 -

PCRA Court Opinion, 4/8/19, at 10–11 (record references and footnotes omitted).

We recently addressed a similar claim of counsel ineffectiveness. In **Commonwealth v. Cole,** ____ A.3d ____, 2020 PA Super 12, *6 (Pa. Super. filed January 24, 2020), the appellant contended that his trial counsel was ineffective because he did not request a jury instruction regarding a witness's *crimen falsi* convictions. After determining that the appellant's claim had arguable merit, we discussed whether counsel's assertion that his failure to request the instruction was reasonable because the Commonwealth had preemptively pointed out the witness's *crimen falsi* crimes. We rejected the concept that counsel acted reasonably because the authority he cited in support, **Commonwealth v. Treadwell**, 911 A.2d 987, 992 (Pa. Super. 2006), was not controlling, to wit, "[a]ppellant is not challenging counsel's failure to admit [the witness's] *crimen falsi* convictions; rather, he is alleging that counsel acted ineffectively by not requesting an instruction regarding that evidence." **Cole**, ____ A.3d at ____, 2020 PA Super 12 at *4.

Based upon the teaching in **Cole**, we find that Appellant's claim of ineffectiveness in regard to the *crimen falsi* instruction has arguable merit. We further find that trial counsel did not have a reasonable basis for foregoing a request for the instruction. At the PCRA hearing, trial counsel could not justify his failure to request the instruction:

> Q. One of the issues that [Appellant] raised was that the [c]ourt should have given an instruction to the jury as to how prior

crimen falsi convictions affect credibility. Do you know why [you] didn't request that instruction?

A. I don't know why. I normally would request a crimen falsi instruction because I brought it to light. So on that one, if it was not, I don't know. I don't have an answer to that.

* * *

Q. Was there any tactical or strategic reason for not doing so?

A. No.

Q. You agree that it would have been beneficial had it been given or could have been beneficial to request it for your client?

* * *

THE WITNESS: It may have been beneficial. It certainly couldn't have hurt, and I normally -- again, my practice would be to request that crimen falsi because I brought it to light with two of the main witnesses.

N.T. (PCRA), 7/7/17, at 29–31. Counsel's acknowledgment that there was no strategic reason for not requesting the *crimen falsi* instruction negates any argument that he acted reasonably in this regard.

We thus assess whether Appellant was prejudiced by counsel's conduct. Appellant contends:

The standard jury instructions, Section 4.08D, instruct the jury that the only purpose for which they may consider the evidence of a prior conviction is whether or not to believe all or part of the witness' testimony. **See** Pa. SSJI (Crim), § 4.08D (2016). The jury may consider the type of crime committed, how long ago it was committed, and how it may affect the likelihood that the witness has testified truthfully in this case. **Id**.

* * *

As a jury is presumed to follow the trial court's instructions, this instruction obviously would be helpful and it could be reasonably concluded that it made a difference in the outcome of the case. . . . Jury instructions exist for a reason. If the jury were to follow the instruction that notes that "the only purpose for which you may consider this evidence of prior convictions is in deciding whether or not to believe all, part, or none of Mr. Williams' and Mr. [Greene's] testimony" there is a reasonable prospect that their testimony would have been wholly rejected and not believed.

This point is critical. If the jury following that instruction decided not to believe all of Mr. [Greene's] testimony, [Appellant] would have been acquitted. If Mr. [Greene] was not believed, then there would be insufficient evidence to convict. It is as simple as that. Thus, the failure to request this instruction caused prejudice as such an instruction likely would have resulted in the jury collectively deciding not to believe any of Mr. [Greene's] testimony.

Appellant's Brief at 28–30.

Appellant's argument is viable; therefore, we consider whether the position of the Commonwealth and the PCRA court that defense counsel's emphasis throughout the trial on Greene's criminal history and his penchant for lying to law enforcement dispels the notion that Appellant was prejudiced by the exclusion of the *crimen falsi* instruction.[6] We again turn to **Cole** to guide our analysis. Therein, the Commonwealth and PCRA court argued that Appellant was not prejudiced by the omitted instruction because the trial court issued a general instruction on assessing witness credibility. We disagreed, concluding instead that "the court's general instructions on witness credibility,

---

[6] Although Appellant notes that witness Williams had extensive *crimen falsi* convictions, he does not contend that the jury's possible rejection of his testimony for credibility reasons would have impacted the guilty verdict.

- 22 -

provided at the beginning and end of Appellant's trial, were not sufficient, as they at no point addressed the specific issue of [the witness's] *crimen falsi* crimes." **Cole**, ___ A.3d at ___, 2020 PA Super 12 at *5 (citing **Commonwealth v. LaMassa**, 532 A.2d 450, 451 (Pa. Super. 1987)). The Court then discussed the PCRA court's rationale that the appellant was not prejudiced because it explained *crimen falsi* when [the witness] testified. We likewise rejected this justification because it was not supported by the record. **Id.** We observed:

> The only statement to which the court could be referring was a ruling on defense counsel's objection to the Commonwealth's asking [the witness] why she was "doing these retail thefts[.]" In overruling the objection, the court remarked, "It's fair background for the witness'[s] credibility." The court did not explain, in this statement, the relevancy of [the witness's] *crimen falsi* offenses, nor instruct the jury on how that evidence could be considered in assessing her credibility.

**Id.** (record references omitted).

In contrast to **Cole**, there is support in the instant record that the jury heard that Greene committed *crimen falsi* crimes and that these crimes called his credibility into question. In his opening statement, defense counsel explained to the jury why it would hear about Greene's prior criminal record:

> [Greene's] the most important guy, and we want to evaluate his credibility. . . . His credibility will be scrutinized by you from the stand. And the reason you're able to hear about his prior record is because it goes to his credibility. Those are crimes, what are called crimen falsi, means crimes of dishonesty.

N.T. (Trial), 10/4/11, at 55. During his cross-examination, defense counsel questioned Greene about both his prior criminal record and the charges

- 23 -

pending against him at the time of trial. N.T. (Trial), 10/5/11, at 355–356. Also, upon questioning from defense counsel, Greene twice admitted lying to the detectives investigating Dawson's murder. *Id.* at 362, 364. Finally, in his closing argument, defense counsel re-emphasized that Greene was untrustworthy:

> [H]e has lied at every stage of this investigation. He's lied from the beginning and I think—and I'm certain he lied yesterday about certain things. And he lied every step in between. Why do I bring up the fact that he has been convicted of theft by unlawful taking, attempted burglary, criminal conspiracy, theft by unlawful taking, criminal conspiracy to commit burglary, burglary, and theft by receiving stolen property, all by the time he was 17 years old? Because it goes to his credibility. Those are crimes of dishonesty. They're called crimen falsi, meaning that the core of those crimes is dishonest behavior.

N.T. (Trial), 10/6/11, at 478.

Considering defense counsel's statements to the jury that Greene's convictions of *crimen falsi* crimes implicated his credibility, we conclude that Appellant cannot establish prejudice based upon the missing jury instruction. Accordingly, Appellant is not entitled to relief on this allegation of ineffectiveness.

For all of the above reasons, we affirm the PCRA court's order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/27/2020