J-A01043-21

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM NOBBLEN, | : | |
| | : | |
| Appellant | : | No. 2726 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 2, 2019
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007012-2015

BEFORE:    BENDER, P.J.E., OLSON, J. and STRASSBURGER, J.*

MEMORANDUM BY BENDER, P.J.E.:                    Filed: August 12, 2021

Appellant, William Nobblen, appeals *nunc pro tunc* from the judgment

of sentence of four to ten years' incarceration, imposed after his conviction

for aggravated assault. After careful review, we affirm.

On June 3, 2015, Appellant was arrested and charged with aggravated

assault and possession of an instrument of crime (PIC),[1] among other

offenses,[2] following an incident on April 16, 2015. Appellant proceeded to a

jury trial on November 6, 2018.

---

[1] 18 Pa.C.S. § 2702(a) and 18 Pa.C.S. § 907(a), respectively.

[2] The Commonwealth withdrew prosecution on the following charges: simple assault, recklessly endangering another person, robbery, possession of firearm prohibited, carrying firearms in public in Philadelphia, theft by unlawful taking, receiving stolen property, and firearms not to be carried without license pursuant to 18 Pa.C.S. §§ 2701(a), 2705, 3701(a)(1), 6105(a)(1), 6108, 3921(a), and 3925(a), respectively.

*Retired Senior Judge assigned to the Superior Court.

The trial court summarized the facts adduced during the jury trial as follows:

> At trial, the Commonwealth first presented the testimony of the complainant, Malik Coyett. [Mr. Coyett] initially testified that he did not remember anything about April 16, 2015. He then testified that he did not recall anything happening to him physically in April of 2015. [Mr. Coyett] remembered leaving Presbyterian Hospital that same month, but he did not remember going to the hospital or whether he received any treatment. He testified that he suffered "some bruising on my head and like stuff like that," specifically on the left side of his forehead. N.T., 11/06/2018, at 32. [Mr. Coyett], at the Commonwealth's request, lifted up his hair, revealing scars that he suffered from "whatever [he was] in the hospital for." *Id.*
>
> [Mr. Coyett] testified that about a month later[,] the police asked him to follow them to the Southwest Detective Division. [Mr. Coyett] remembered that the police showed him a video, but he did not remember making a statement about what happened to him on the night of April 16, 2015. [Mr. Coyett] testified, "To be honest with you, I really don't want to do this…." *Id.* at 35-36. When asked why, [Mr. Coyett] testified, "I'm just saying whatever happened[,] I'm pas[t] that. You know what I mean? I'm pas[t] it and trying to do things for the future." *Id.* at 36.
>
> At this point, the Commonwealth confronted [Mr. Coyett] with a statement he gave to detectives during an interview on May 13, 2015. As introduced at trial, the [statement conveyed that] [Mr. Coyett] went to Spiro's Bar, located at the intersection of 40th Street and West Girard Ave. on the night of April 16, 2015. [Mr. Coyett] was standing outside the bar around 11:45 p.m. when someone hit [Mr. Coyett] from behind. [Mr. Coyett] blacked out and woke up in the hospital with six to seven fractured bones in his face, thirty stitches in his face, and about six staples in his head.
>
> [Mr. Coyett]'s medical records from Presbyterian Hospital in the early morning hours on April 17, 2015[, were admitted into evidence]. [Mr. Coyett] had been "pistol whipped" and received treatment for "assault, loss of consciousness, and several fractures" as well as "loss of vision in his left eye." N.T.,

- 2 -

11/07/2018, at 115. He "was treated with the staples, stitches, and stabilization, and was given medication, including antibiotics and pain medication." *Id.* at 116. [Mr. Coyett] was discharged from the hospital in the evening on April 20, 2015.

Officer Calvin Vaughn testified that he received a radio call regarding an assault around 11:57 p.m. on the night of April 16, 2015. He explained that the assault probably took place around 11:45 p.m. based on the time he received the radio call, as well as information later obtained from [Mr. Coyett]. He went to Presbyterian Hospital's emergency room where he encountered [Mr. Coyett], who "had blood coming out of his face" and "knots on his face." *Id.* at 12. Officer Vaughn testified that [Mr. Coyett] was "uncooperative" and "didn't want to give me the right information I needed to put in my report." *Id.* at 13.

Detective Thomas DiLauro testified that he went to Spiro's Bar and reviewed the bar's outdoor surveillance videos on April 18, 2015, that depicted the assault, but he was unable to retrieve a diskette copy of the video. He instead recorded the surveillance video with his cellular phone....

Officer Brian McCarthy testified that he went to Encore's Bar, located across the street form Spiro's Bar, on April 26, 2015. He obtained a copy of Encore's surveillance video from the night of April 16, 2015, which shows a male wearing a two-toned Phillies jacket in the area of Spiro's bar around 11:25 p.m. Officer McCarthy identified [Appellant] as the male in the Phillies jacket based on their previous encounters....

The police showed [Mr. Coyett] three still photographs captured from Encore's surveillance video[] during his interview on May 13, 2015. The photographs depict a male standing outside wearing a two-toned Phillies jacket, who [Mr. Coyett] identified as [Appellant]. The police then showed [Mr. Coyett] the Spiro's surveillance video from the night of April 16, 2015. [Mr. Coyett] again identified [Appellant. Detective Francesco Campbell testified that a]fter the police showed [Mr. Coyett] a photo array, [Mr. Coyett] signed a photograph of [Appellant] and stated that "he pistol whipped me[ with a] gun [in] my face and head." N.T., 11/0[7]/2018, at [108].

Detective Matthew Carey testified that he was the detective who documented [Mr. Coyett]'s interview on May 13,

2015. Detective Carey testified regarding the written statement [Mr. Coyett] signed and explained that [Mr. Coyett] did not have any difficulty understanding the directions and interview questions. Detective Carey then read into evidence specific questions and answers contained in [Mr. Coyett]'s statement, including the following:

> … "Do you recall being assaulted on April 16, 2015 at 11:45 p.m. at 4002 Girard Avenue?" ["]I remember getting hit the first time and then I blacked out. I don't remember anything else. I remember waking up in the hospital.["]
>
> "Where were you prior to getting hit?" "Inside Spiro's Bar." …
>
> "Did you have an altercation inside the bar?" ["N]o.["]
>
> "Who did you leave the bar with?" ["]I left by myself.["]
>
> "Do you recall talking to anyone leaving Spiro's Bar?" ["]I was talking to a couple of girls.["]
>
> ["]Police Officer Kennedy... just showed you three still images. Do you recognize this male?["] ["Y]es.["]
>
> ["What is his name?[" "T]hey call him Nobs or Nobes.["]
>
> ["H]ow do you know this male?["] ["]I just seen him around the neighborhood.["]
>
> ["]Malik, you were just shown a video of yourself. Do you remember the male in the Phillies jacket?" ["Y]es.[" "]Who was the male in the Phillies jacket?["] ["]Nobes.["]
>
> "Do you recall Nobes hitting you?" "I was hit from behind. I didn't see him hit me."

N.T., 11/07/2018, at 87-93.

- 4 -

Trial Court Opinion (TCO), 2/21/2020, at 2–4 (unnumbered, some citations omitted or altered for consistency).

On November 8, 2018, after a three-day trial, the jury found Appellant guilty of aggravated assault and not guilty of PIC. On April 2, 2019, Appellant was sentenced to four to ten years' imprisonment. Appellant filed a timely post-sentence motion, which was denied without a hearing on April 23, 2019. On July 2, 2019, Appellant filed a timely petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, seeking the reinstatement of his appellate rights. On September 16, 2019, the trial court granted Appellant's petition, and he filed a notice of appeal *nunc pro tunc*. Appellant thereafter complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court filed its Rule 1925(a) opinion.

Herein, Appellant states four issues for our review:

I. Is the evidence legally sufficient to support the conviction of Appellant?

II. Is the verdict of guilty against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice under the circumstances of this case?

III. Did the trial court err and/or abuse its discretion when it allowed into evidence testimony which was in violation of Rule of Evidence 403[?]

IV. Did the trial court make an error of law by not granting a mistrial when a Commonwealth witness read a statement into evidence in violation of *Commonwealth v. Brady*, 507 A.2d 66 ([Pa. ]1986)[?]

Appellant's Brief at 5 (trial court answers omitted).

Appellant first challenges the sufficiency of the evidence to sustain his conviction for aggravated assault. To begin, we note our standard of review of a challenge to the sufficiency of the evidence:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011). Additionally, "we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct." *Commonwealth v. Hilliard*, 172 A.3d 5, 10 (Pa. Super. 2017) (citation omitted).

Appellant does not challenge that the Commonwealth proved the elements of aggravated assault but, rather, he claims that the Commonwealth failed to prove that he was the individual who assaulted Mr. Coyett. *See Commonwealth v. Brooks*, 7 A.3d 852, 857 (Pa. Super. 2010) ("In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes."). He argues that

Mr. Coyett did not provide a reliable identification of Appellant because Mr. Coyett could not remember the incident at trial and his testimony was "inconsistent, erratic, and vague." Appellant's Brief at 16. Appellant further contends that "the only evidence that purports to identify Appellant as committing the assault is a video from outside Spiro's Bar. However, the video is of extremely poor quality, making it impossible to identify anyone who is observed." *Id.* at 15. Finally, he asserts that the Commonwealth failed to offer any "physical, scientific, or corroborative evidence" to support his guilt. *Id.*

We disagree. Mr. Coyett identified Appellant as his assailant in his statement to the police. Additionally, the police presented Mr. Coyett with a photo array, and Mr. Coyett selected the photograph of Appellant as the person who assaulted him, identifying Appellant by name. N.T., 11/07/2018, at 95-96. Both Mr. Coyett's statement to police and the photo array were introduced at trial as substantive evidence. Contrary to Appellant's argument, Mr. Coyett's statement is sufficient to identify Appellant, notwithstanding his subsequent inability to recall the incident. *See Commonwealth v. Hanible*, 836 A.2d 36, 39 (Pa. 2003) (holding that the out-of-court statement of the sole eyewitness who recanted at trial was sufficient to sustain Hanible's conviction for first-degree murder).

To the extent Appellant is arguing Mr. Coyett's testimony at trial should be credited over his prior identification, Appellant's claim concerns

the weight of the evidence, not its sufficiency. *See Commonwealth v. Cain*, 906 A.2d 1242, 1245 (Pa. Super. 2006) ("[U]ncertainty in an eyewitness's identification of a defendant is a question of the weight of the evidence, not its sufficiency.").

Moreover, Mr. Coyett's prior statement was not the only evidence identifying Appellant as the person who assaulted Mr. Coyett. The Commonwealth also presented videos recorded by Encore and Spiro's Bar. Officer McCarthy candidly acknowledged that the Spiro's Bar video was "pretty bad," and that he would not have been able to identify Appellant solely based on that video. N.T., 11/07/2018, 65-66. However, he was able to identify Appellant because Appellant's face was clearly visible in the Encore video and his Phillies Jacket was visible in both videos. *Id.* at 55, 65-66. Accordingly, the Commonwealth presented sufficient evidence to identify Appellant as Mr. Coyett's attacker to sustain his aggravated assault conviction.

Next, Appellant asserts the trial court abused its discretion by denying his motion for a new trial based on his claim that the verdict was against the weight of the evidence. Our standard of review for evaluating a weight-of-the-evidence claim is well-established:

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review. Moreover, where the trial court

has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (citations omitted). "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006) (citation omitted). Therefore, "[a]n appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence," as the trial judge is in the best position to view the evidence presented. *Id.* (quoting *Commonwealth v. Wright*, 865 A.2d 894, 915 (Pa. Super. 2004)). Moreover, "it is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." *Gibbs*, 981 A.2d at 282 (citation omitted).

Instantly, Appellant reiterates his argument that there was no credible identification of Appellant as the person who assaulted Mr. Coyett. As with his sufficiency claim, Appellant's weight challenge is based on the credibility of Mr. Coyett and the quality of the video from Spiro's Bar. Appellant's Brief at 19-20. Appellant asserts that Mr. Coyett's prior statement identifying Appellant is unreliable because Mr. Coyett "admits [to] having been drinking alcohol," and his trial "testimony was untrustworthy at best" because of prior

convictions for *crimen falsi* offenses and lack of memory.[3] *Id.* Regarding the video evidence, Appellant claims that the Spiro's Bar video was too low-quality to provide an identification. Furthermore, he avers the video is unreliable because Detective DiLauro recorded the footage on his cell phone and "no scientific analysis authenticated the video." *Id.* at 20.

In rejecting Appellant's weight-of-the-evidence claim, the trial court explained that

> [a] surveillance video from Spiro's Bar showed that a male in a two-tone Phillies jacket assaulted [Mr. Coyett]. The surveillance video from Encore's Bar showed that [Appellant] was wearing a two-tone Phillies jacket in the area of Spiro's Bar around 11:25 p.m., roughly twenty minutes before the assault took place.

TCO at 12 (unnumbered) (citations omitted). The trial court concluded that "the evidence is not so tenuous, vague, and uncertain that it would shock one's conscience." *Id.* We agree with the trial court that the verdict was not against the weight of the evidence. The jury was free to believe Mr. Coyett's statement to police and Officer McCarthy's testimony identifying Appellant as the individual in the Phillies jacket in the Encore's Bar video, and Officer McCarthy's testimony that the same person can be seen attacking Mr. Coyett

---

[3] At trial, Appellant impeached Mr. Coyett's credibility by cross examining him regarding five prior convictions for burglary, which he admitted. N.T., 11/06/2018, at 87. A jury may consider a witness's *crimen falsi* offenses as casting doubt on the witness's overall credibility. **Commonwealth v. Cole**, 227 A.3d 336, 340 (Pa. Super. 2020) (explaining that a witness may be impeached with a prior conviction for burglary because burglary is a *crimen falsi* offense, or an offense involving dishonesty or false statement).

in the Spiro's Bar video. ***See Commonwealth v. Jacoby***, 170 A.3d 1065, 1080 (Pa. 2017) ("[T]he jury [is] the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses."). Moreover, the jurors were able to watch both videos and make their own identification as to whether the individual who assaulted Mr. Coyett was Appellant. Accordingly, we conclude that the trial court did not abuse its discretion in denying Appellant's weight claim.

In Appellant's third issue, he asserts that the trial court erred by permitting the Commonwealth to introduce evidence that he was involved in a prior murder. He contends that this evidence was improperly admitted because evidence of prior criminal conduct cannot be introduced to prove guilt in the instant case, and "'the effect of such evidence is to create prejudice against the defendant in the jury's mind.'" Appellant's Brief at 21-22 (quoting ***Commonwealth v. Laughman***, 452 A.2d 548, 549 (Pa. Super. 1982)). Appellant further argues that the evidence was so prejudicial he should be granted a new trial.

> When reviewing a claim concerning the admissibility of evidence, and specifically evidence of other crimes or bad acts by a defendant, we note:
>
> > The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to

> establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Reid*, 811 A.2d 530, 550 (2002) (citations omitted). An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Further, an abuse of discretion may result where the trial court improperly weighed the probative value of evidence admitted against its potential for prejudicing the defendant.

*Commonwealth v. Weakley*, 972 A.2d 1182, 1188–89 (Pa. Super. 2009) (cleaned up).

During the direct examination of Mr. Coyett, the Commonwealth questioned Mr. Coyett regarding portions of his statement to police where he explained his previous relationship with Appellant and Appellant's motive to attack him. Appellant objected in anticipation of testimony describing an interaction between Appellant and Mr. Coyett that referred to Appellant's presence at a recent murder. After the trial court overruled Appellant's objection, the Commonwealth read the following portion of Mr. Coyett's interview with the police during the direct examination of Mr. Coyett:

Do you know why you were assaulted[?]

I think it's because I saw Nobes a couple months ago. I was talking to him about the night the guy got killed and Nobes was telling me that Justin killed him because it was some kind of beef.

\*\*\*

Was Nobes there the night that Wink got killed?

[Y]es, he was out there.

N.T., 11/06/2018, at 68. No further elaboration on the prior incident was provided.

Appellant contends that "the import [of the statement] is unmistakable—this specific reference to prior unrelated criminal conduct, notably the connection to a homicide and retaliation against [Mr. Coyett] as a result, created prejudice against []Appellant in the jury's mind and effectively stripped him of his presumption of innocence." Appellant's Brief at 24. He argues that the prejudicial effect of the statement is compounded because "the other evidence presented against Appellant is weak...[, and] no curative instruction was given." *Id.* at 25. Appellant does not offer a discussion of the probative value of the evidence, instead asserting that it is "wholly irrelevant." *Id.*

The trial court determined that Mr. Coyett's explanation of his interaction with Appellant prior to the assault was particularly relevant to show Appellant's motive in light of "[Appellant's] theory that [he] did not commit the assault." TCO at 17 (unnumbered). We agree with the trial court and find Appellant's argument unconvincing. Mr. Coyett's statement was relevant to establish the relationship between Appellant and Mr. Coyett, which provides context not only for the assault, but also for Mr. Coyett's

ability to identify Appellant as the assailant. While there is no doubt that evidence of prior crimes carries the risk of undue prejudice, we are unpersuaded that Mr. Coyett's statement imparts this prejudice. The statement does not accuse or imply that Appellant committed the murder; indeed it names someone else as the murderer. To the extent the statement links both Appellant and Mr. Coyett to the murder, it does so to establish that they knew one another and were involved, at least tangentially, in "some kind of beef." N.T., 11/06/2018, at 68. In offering an explanation and motive for the assault at issue, this evidence surely prejudiced Appellant; however, the prejudice was not unfair. *Commonwealth v. Akhmedov*, 216 A.3d 307, 316 (Pa. Super. 2019) ("Evidence will not be excluded merely because it is harmful to the defendant's case."). Accordingly, we conclude that the trial court did not abuse its discretion by admitting this portion of Mr. Coyett's statement.

In his final issue, Appellant challenges the admission of Mr. Coyett's statement to police as substantive evidence. Appellant's Brief at 25. Appellant argues that the statement is inadmissible because Mr. Coyett did not adopt the statement and because the statement is not inconsistent with Mr. Coyett's trial testimony that he did not remember the assault. *Id.* at 26.

A prior statement is admissible when a declarant-witness claims an inability to remember the subject matter of the statement and the statement is in writing and adopted by the witness, unless the court determines the

memory loss to be credible, pursuant to Pa.R.E. 803.1(4). The comment to

that rule provides, in pertinent part:

> The purpose of this hearsay exception is to protect against the "turncoat witness" who once provided a statement, but now seeks to deprive the use of this evidence at trial. It is intended to permit the admission of a prior statement given under demonstrably reliable and trustworthy circumstances, *see, e.g.*, ***Commonwealth v. Hanible***, 30 A.3d 426, 445 n.15 (Pa. 2011), when the declarant-witness feigns memory loss about the subject matter of the statement.

Pa.R.E. 803.1(4) (*Comment*).

First, as the trial court determined, Mr. Coyett's statements to police

"were in writing and he signed and adopted them. Although [Mr. Coyett] did

not remember answering the questions or signing the writing, he verified

that his signature was located at the bottom of each page[.]" TCO at 14

(unnumbered); ***See Commonwealth v. Enix***, 192 A.3d 78, 81-82 (Pa.

Super. 2018) (providing that a statement to police that has been reduced to

a writing and signed by the witness is reliable and trustworthy). Thus, the

statement was given under demonstrably reliable circumstances, and we

proceed to considering whether Mr. Coyett was feigning his memory loss at

trial.

Although we acknowledge the trial court credited some memory loss

as a symptom of Mr. Coyett's injuries, TCO at 10-11, Mr. Coyett explained

his lack of cooperation as a Commonwealth witness, testifying:

> To be honest with you, I really don't want to do this. … Because I really don't care about—I never wanted this court situation to happen. I never wanted to go and press charges on nobody. You

know, whatever happened, it happened. You know what I mean? That's how life goes. … It happened. You know, I moved on with my life, trying to, you know, go to the next step of my life. … I'm just saying whatever happened, happened…. I'm pas[t] it and trying to do things for the future.

N.T., 11/06/2018, at 35-36. Because Mr. Coyett's refusal to testify about the April 16, 2015 assault was grounded in his hostility to the court proceedings and not, as he claimed, an inability to remember, his prior statement to police was properly admitted pursuant to Pa.R.E. 803.1(4).[4] Accordingly, Appellant's fourth claim is meritless.

Judgment of sentence affirmed.

_____

[4] The trial court admitted the statement pursuant to Pa.R.E. 803.1(1), which permits prior statements that are a writing signed and adopted by the declarant and inconsistent with the declarant-witness's testimony to be used as substantive evidence. Pa.R.E. 803.1(1); TCO at 13 (unnumbered). The trial court noted that Mr. Coyett's testimony on direct-examination was internally inconsistent; Mr. Coyett remembered giving a statement to police, but did not remember the specifics of that statement, and he remembered seeing a video of the incident, but did not remember if he had identified anyone in the video. TCO at 15.

Generally, failure to remember is not inherently contradictory to any prior statements given. *See Commonwealth v. Watley*, 153 A.3d 1034 (Pa. Super. 2016); *Commonwealth v. Morris*, 417 A.2d 748 (Pa. Super. 1979); and *Commonwealth v. Moore*, 340 A.2d 447, 449 (Pa. 1975). As Appellant argues, Mr. Coyett did not refute or contest the accuracy of the statement he gave to police. Appellant's Brief at 25-27. Instead, he maintained that he had no direct memory of April 16, 2015, saying "I don't remember the day. All you [*sic*] doing is showing me stuff that was either said or that was written down and the video. That doesn't make me remember the incident." N.T., 11/06/2018, at 60. Accordingly, Pa.R.E. 803.1(4), not 803.1(1), is the appropriate exception to the hearsay rule allowing Mr. Coyett's prior statements to be admitted into evidence. Nevertheless, "we may affirm the trial court's determination on any grounds, even where those grounds were not suggested to or known by the trial court." *Commonwealth v. Gatlos*, 76 A.3d 44, 62 n.14 (Pa. Super. 2013).

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/12/21</u>