J-S58024-19

2020 PA Super 12

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                    :             PENNSYLVANIA
                                      :

             v.                               :
                                      :
                                      :

TERSAUN COLE                       :
                                      :

             Appellant           :       No. 421 WDA 2019

Appeal from the PCRA Order Entered February 21, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0002470-2011

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and DUBOW, J.

OPINION BY BENDER, P.J.E.:                 FILED JANUARY 24, 2020

Appellant, Tersaun Cole, appeals from the post-conviction court's February 21, 2019 order dismissing his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful review, we reverse the court's order, vacate Appellant's judgment of sentence, and remand for a new trial.

This Court previously summarized the evidence presented at Appellant's trial, as follows:

> Denise Hayden ("Ms. Hayden") was returning to her Elmore Square apartment in a private cab on December 30, 2010.  As the cab approached Elmore Square, Ms. Hayden observed a young man she knew as "P Murph" run across the street and up to Appellant and two other young men, all of whom were dressed in black and standing in a doorway.  Ms. Hayden saw a handgun in Appellant's hand. After entering her street-level apartment, Ms. Hayden heard gunshots and ran to the courtyard.  There, she saw the victim come out of a hallway and fall to his knees.  She also saw Appellant with the gun in his hand run out of the hallway. N.T., 3/19/13, at 44–50.  Two or three days before the shooting,

Ms. Hayden observed Appellant, "P Murph," and two men she did not recognize near the fence, looking toward the courtyard at the victim. She overheard one of them say, "We didn't get him today. We'll get him tomorrow." Id. at 53–58, 62.

The victim's stepbrother, Edwin Peoples, and the victim's cousin, Deron Townsend, were eye-witnesses to the shooting. They both described the events leading up to and including when Appellant and a lighter-skinned man shot the victim, while a third man stood watch. N.T., 3/19/13, at 103–111, 121–130. They both identified Appellant from a photographic array as one of the shooters. Id. at 111, 129.

Pittsburgh Homicide Detective George Satler reviewed video footage captured from security cameras around Elmore Square between 3:17 p.m. and 3:19 p.m. on December 30, 2010. The videos showed three individuals exiting an apartment and walking out of sight, the victim staggering and falling to the ground, and the same three individuals running away and fleeing in a vehicle. The cameras did not capture the actual shooting. N.T., 3/19/13, at 74–87, Commonwealth Exhibits 6 and 7 (videos).

On January 3, 2011, the Allegheny County District Attorney filed a criminal information, charging Appellant with [first-degree murder, robbery, conspiracy, and carrying a firearm without a license]. During the early morning hours of January 23, 2011, Pittsburgh Police Officer Jeffrey Tomer initiated a traffic stop on Pittsburgh's North Side. Appellant was a passenger in the back seat of the vehicle. Once the vehicle stopped, Appellant fled on foot. Officer Tomer apprehended Appellant, arrested him, and found two identification cards on him, one with Appellant's name and one for a "Jaison Houser." Appellant informed the officer that he was Jason Houser and that Cole was his cousin. N.T., 3/19/13, at 143–148, Commonwealth Exhibits 20 and 21.

Appellant proceeded to trial on March 19, 2013.

Commonwealth v. Cole, 135 A.3d 191, 192–93 (Pa. Super. 2016), appeal denied, 145 A.3d 162 (Pa. 2016).

At the close of Appellant's trial, he was convicted of the above-stated offenses. On June 19, 2013, he was sentenced for his murder conviction to life imprisonment, without the possibility of parole ("LWOP"), as well as a

- 2 -

consecutive term of 15 to 30 years' for his robbery and conspiracy offenses. He received no further penalty for his firearm conviction.

Appellant filed a direct appeal, and this Court affirmed his convictions, but vacated a mandatory-minimum sentence the court had imposed for Appellant's robbery conviction, concluding that it was illegal under Alleyne v. United States, 570 U.S. 99, 106 (2013) (holding that "facts that increase mandatory minimum sentences must be submitted to the jury" and found beyond a reasonable doubt). See Cole, 135 A.3d at 196. On November 9, 2017, the trial court resentenced Appellant to the same, aggregate term of incarceration, which included a discretionary term of 5 to 10 years' imprisonment for robbery.

Appellant then filed a timely, pro se PCRA petition, and counsel was appointed. On January 2, 2019, counsel filed an amended petition on Appellant's behalf, raising several claims of trial counsel's ineffectiveness. On January 29, 2019, the court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition. He did not respond, and on February 21, 2019, his petition was dismissed. Appellant filed a timely notice of appeal, and he complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court filed its Rule 1925(a) opinion on May 30, 2019.

Herein, Appellant states four issues for our review, which we have reordered for ease of disposition:

1. Did the PCRA court err in dismissing [Appellant's] claim that trial counsel was ineffective in failing to request a jury instruction that [Ms.] Hayden's convictions undermined her credibility?

2. Did the PCRA court err in dismissing [Appellant's] claim that trial counsel was ineffective because, although she was obligated to use a Commonwealth witness, [Ms.] Hayden's, prior convictions for retail theft, a crimen falsi offense, to impeach her credibility at trial, her law firm was concurrently representing and had previously represented [Ms.] Hayden in prosecutions leading to those convictions, rendering her likewise obligated to keep confidential all information related to those prosecutions, and she failed to use the convictions to impeach [Ms.] Hayden's credibility?

3. Did the PCRA court err in dismissing [Appellant's] claim that trial counsel was ineffective in failing to impeach one of the Commonwealth's chief witnesses, Edwin Peoples, with numerous prior inconsistent statements?

4. Did the PCRA court err in dismissing [Appellant's] claim that trial counsel was ineffective in failing to argue that the evidence presented at trial did not establish a robbery?

Appellant's Brief at 4.

First, "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." Commonwealth v. Morales, 701 A.2d 516, 520 (Pa. 1997) (citing Commonwealth v. Travaglia, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and

counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ... [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

Commonwealth v. Johnson, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

Appellant first contends that trial counsel acted ineffectively by not requesting that the court instruct the jury regarding Denise Hayden's crimen falsi convictions. During Ms. Hayden's direct-examination, she admitted that she had been previously convicted of retail theft, and that she was presently incarcerated for violating her probation by committing a new retail theft. See N.T. Trial, 3/19/13, at 44-45. Appellant claims that, given this testimony, "he was at least arguably entitled to obtain a jury instruction that [Ms.] Hayden's convictions for retail theft could be considered to undermine her credibility." Appellant's Brief at 39.

We agree that Appellant's claim has arguable merit. As Appellant correctly observes, "[g]enerally, '[d]efendants are generally entitled to instructions that they have requested and that are supported by the evidence.'" Appellant's Brief at 39 (quoting Commonwealth v. Charleston, 94 A.3d 1012, 1026 (Pa. Super. 2014) (citations omitted)). Here, Ms. Hayden testified about her retail theft convictions, which were properly

admitted to impeach her credibility. See Commonwealth v. LaMassa, 532 A.2d 450, 452 (Pa. Super. 1987) (internal citations omitted) ("In Pennsylvania, a witness may be impeached by showing a prior conviction if the crime involved dishonesty or false statement. Burglary and theft are offenses which are crimen falsi."). Therefore, Appellant was entitled to a jury instruction regarding the relevancy of Ms. Hayden's crimen falsi convictions, and how the jury could utilize that evidence in assessing her credibility. See id. (concluding that LaMassa was entitled to a jury instruction regarding the "relevancy and the use which could be made of [the witness's crimen falsi convictions] in determining [the witness's] credibility"). Consequently, Appellant's claim that counsel acted ineffectively by not requesting such an instruction has arguable merit.

In regard to the reasonable basis prong of the ineffectiveness test, Appellant states:

> Simply put, there is only benefit, and no burden, to seeking and obtaining an instruction that highlights a Commonwealth witness's prior convictions for crimes of dishonesty and directs jurors that they are permitted to consider those convictions as undermining her testimony. Thus, [defense counsel's] failure to seek and obtain such an instruction lacked a reasonable strategic basis.

Appellant's Brief at 42.

Initially, it is unfortunate that the PCRA court did not conduct a hearing to permit Appellant to elicit counsel's testimony regarding her decision not to request the at-issue instruction. However, we need not remand for such a

hearing. As discussed in more detail infra, Ms. Hayden's testimony was vital to the Commonwealth's case against Appellant, especially in terms of proving the premeditation element of first-degree murder. Thus, counsel could have had no reasonable basis for not requesting that the jury be instructed that it could consider Ms. Hayden's crimen falsi offenses as casting doubt on her overall credibility.

Moreover, we reject the Commonwealth's suggestion that counsel acted reasonably because, "[i]n circumstances like those in the case at bar, where the Commonwealth preemptively pointed out the commission by a witness of crimen falsi [crimes], this Court ha[s] concluded that there is no obvious benefit to counsel['s] raising it again." Commonwealth's Brief at 26-27 (citing Commonwealth v. Treadwill, 911 A.2d 987, 992 (Pa. Super. 2006)). In Treadwill, we rejected the appellant's argument that his counsel acted ineffectively by not seeking to admit a witness's crimen falsi convictions. Treadwill, 911 A.2d at 992. We concluded that because "the Commonwealth pre-emptively raised the issue of [the witness's] crimen falsi [crimes]," the appellant's counsel could procure "no obvious benefit from raising it again." Id. Thus, "there was a reasonable basis for trial counsel's inaction." Id.

The issue in Treadwill is not analogous to the case at hand. In the issue we are addressing, Appellant is not challenging counsel's failure to admit Hayden's crimen falsi convictions; rather, he is alleging that counsel acted ineffectively by not requesting an instruction regarding that evidence. Clearly, Appellant would have only benefitted from the court's informing the jury that

it could consider Hayden's crimes in assessing her credibility. Therefore, Treadwill does not impact our conclusion that counsel could have had no reasonable basis for not asking for a crimen falsi jury instruction.

Next, we assess whether Appellant was prejudiced by counsel's conduct. In this regard, Appellant explains:

> [T]he Commonwealth's case rested largely on testimony from [Ms.] Hayden that, a few days prior to the shooting, [Appellant] was standing outside with three other men, looking at Hill, and one of the men indicated, "We didn't get him today. We'll get him tomorrow," which suggested that Hill and others had a days-long conspiracy to either rob or kill Hill. [Ms.] Hayden's testimony in this regard, if believed, would persuasively establish the element of premeditation necessary for a conviction of first-degree murder, disprove any potential claim of self-defense, or establish a conspiracy to rob Hill, supporting a theory of felony murder, see 18 Pa.C.S. [§] 2502(a)[,] (d) (defining first-degree murder as a "willful, deliberate, and premeditated killing"); 18 Pa.C.S. § 2502(b) (defining second-degree murder as a murder occurring while the defendant is a "principal or an accomplice in the perpetration of a felony"), as well as robbery and criminal conspiracy itself. Also detailed above, none of the Commonwealth's other witnesses offered such damning evidence establishing [Appellant's] participation in a protracted plot against Hill. Indeed, the Commonwealth in its summation repeatedly emphasized [Ms.] Hayden's testimony as crucial in meeting its burden of proof. See, e.g., N.T., 3/20/13, at 41 ("[T]hey know where they're going, because we heard Ms. Hayden tell us days before, a couple days before the shooting, the defendant and his associates were out here. They were looking right at who? Right at [Hill], saying, [']We didn't get him today; we'll get him tomorrow.['] And they did."); id. at 43 ("What is premeditation? It's planning beforehand.... What evidence do we have of a plan? We didn't get him today; we'll get him tomorrow."); id. at 48 ("I submit ... to you it was an assassination and first[-]degree murder. We didn't get him today; we'll get him tomorrow.")[.]
>
> Had the jury been instructed that [Ms.] Hayden's convictions constituted a basis for discounting her testimony, there is a reasonable probability that [Appellant] would have been convicted

of a lesser degree of murder or acquitted of homicide, robbery, and/or criminal conspiracy. Indeed, [Ms.] Hayden's testimony, even without the instruction, suffered from veracity and credibility problems. First, she was, at the time of the shooting, an avowed crack cocaine addict, see N.T. Trial, 3/19/13, at 45.... Moreover, she was a crack cocaine addict who worked for Hill and Peoples, bringing them purchasers, see N.T. Trial, 3/19/13, at 113-14, suggesting that her addiction and income might reasonably have been dependent on bolstering the likelihood of Peoples' preferred outcome at trial. Furthermore, the substance of [Ms.] Hayden's testimony itself raises skepticism: [I]t is difficult to imagine why four men interested in plotting a robbery and/or murder would do so in public, in view and potentially [in] earshot of their intended victim, and declare that they will return to execute their scheme the next day (only to do so several days later). Had the jury been instructed that [Ms.] Hayden's crimes of dishonesty were yet further reason to view [Ms.] Hayden's testimony with suspicion, there is a reasonable likelihood that it would have tipped the proverbial balance in favor of discrediting her, and, thus, undermined the Commonwealth's chief theory of premeditation, robbery, and/or conspiracy.

Appellant's Brief at 43-46.

Appellant's prejudice argument is convincing, and neither the Commonwealth nor the PCRA court offer any compelling rationale to undermine it. First, the Commonwealth wholly misconstrues Appellant's claim as an allegation that "counsel ineffectively failed to object to the court's instruction concerning credibility because it did not advise the jury to consider [] Hayden's convictions for retail theft." Commonwealth's Brief at 23 (emphasis added). It then goes on to insist that counsel had no basis for objecting to the court's "appropriate" charge regarding the jury's general assessment of witness credibility. Id. However, Appellant is not arguing that counsel should have objected to the charge as given; he is claiming that

counsel should have requested a more specific instruction regarding Hayden's credibility in light of her crimen falsi convictions.

The Commonwealth also argues, and the PCRA court concludes, that Appellant was not prejudiced by the omitted crimen falsi instruction because the trial court provided a general instruction on assessing witness credibility. See id. at 27; PCRA Court Opinion (PCO), 5/30/19, at 5 (rejecting Appellant's ineffectiveness claim because the court "instructed the jury before the start of testimony that it was their job to assess credibility, gave an explanation of crimen falsi when the witness testified[,] and reiterated the instruction immediately prior to jury deliberations during the jury charge"). We disagree. In LaMassa, "[t]he trial court instructed the jury regarding various factors which it could consider in determining the credibility of the witnesses. However, the court did not instruct the jury about the use to be made of prior convictions of [one of the Commonwealth's witnesses,]" although defense counsel had requested such an instruction. LaMassa, 532 A.2d at 451. On appeal, we held that the trial court had erred by denying defense counsel's request for a crimen falsi instruction, thus demonstrating that the trial court's general instruction on witness credibility was not sufficient. Id. at 451-52.

In this case, Appellant was likewise entitled to a jury charge regarding the relevancy of Ms. Hayden's crimen falsi convictions and how the jury could use that evidence in assessing her credibility. Pursuant to LaMassa, the court's general instructions on witness credibility, provided at the beginning and end of Appellant's trial, were not sufficient, as they at no point addressed

the specific issue of Ms. Hayden's crimen falsi crimes. See N.T. Trial, 3/19/13, at 10; N.T. Trial, 3/20/13, at 54-55.

Moreover, the record does not support the PCRA court's statement that it explained crimen falsi crimes when Hayden testified. See PCO at 5 (declaring that it "gave an explanation of crimen falsi when the witness testified"). The only statement to which the court could be referring was a ruling on defense counsel's objection to the Commonwealth's asking Ms. Hayden why she was "doing these retail thefts[.]" N.T. Trial, 3/19/13, at 45. In overruling the objection, the court remarked, "It's fair background for the witness'[s] credibility." Id. The court did not explain, in this statement, the relevancy of Ms. Hayden's crimen falsi offenses, nor instruct the jury on how that evidence could be considered in assessing her credibility. Additionally, as Appellant avers,

> the [c]ourt's indication in this regard was an evidentiary ruling, and, at the beginning of trial, the court specifically admonished the jury, "do not concern yourselves with any objections and my reasons for ruling on them." [N.T. Trial, 3/19/13,] at 14. Moreover, the question did not concern Hayden's convictions themselves, but, rather, her motivation for committing them, and, as detailed above, an instruction regarding crimen falsi is specific and distinct from other general concepts relating to credibility.

Appellant's Brief at 50 n.13. Therefore, this ruling by the court did not resolve the prejudice that Appellant suffered by counsel's failure to request a crimen falsi jury instruction.

In sum, we conclude that the PCRA court erred by rejecting Appellant's claim that his trial counsel acted ineffectively by not requesting a jury

instruction regarding the impact that Ms. Hayden's crimen falsi offenses could have on the jury's assessment of her credibility. The evidence supported the trial court's providing such an instruction, had counsel requested it. See Charleston, 94 A.3d at 1026. Additionally, we can discern no basis on which counsel could have reasonably foregone asking for the instruction, and we conclude that there is a reasonable probability that the result of Appellant's trial would have been different had a crimen falsi instruction been given. Consequently, Appellant is entitled to a new trial.[1]

Order reversed. Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/24/2020

---

[1] In light of this disposition, we need not address Appellant's remaining issues.