J-S13002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JEREMY TYLOR ALSTON | |
| Appellant | No. 1171 MDA 2021 |

Appeal from the PCRA Order Entered August 4, 2021
In the Court of Common Pleas of Lancaster County
Criminal Division at No: CP-36-CR-0001212-2017

BEFORE: STABILE, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                **FILED: MAY 25, 2022**

Appellant, Jeremy Tylor Alston, appeals from an order denying his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541—9546. A jury found Appellant guilty of aggravated assault, carrying a firearm without a license and reckless endangerment[1] arising from a fight in which Appellant struck the victim in the face with a firearm. Appellant's principal argument is that trial counsel was ineffective for failing to request a *crimen falsi* jury instruction even though one of two Commonwealth eyewitnesses had a prior juvenile adjudication for retail

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702, 6106, and 2705, respectively.

theft.   We conclude that trial counsel's failure to request a *crimen falsi*

instruction did not prejudice Appellant, and we affirm.

The PCRA court accurately recounted the evidence adduced during trial

as follows:

> The Commonwealth presented two eyewitnesses at trial to establish the elements of aggravated assault: Pablo Rivera, the aggravated assault victim, and Jequan Turner, the witness that observed [Appellant] strike Rivera.  During trial, both Rivera and Turner claimed that they knew [Appellant] prior to the incident and recognized him during the fight. Rivera previously met [Appellant] because he played football with [Appellant]'s son (Jeremy Alston, Jr.) for approximately four years and had been to football events with [Appellant].  Turner knew [Appellant] because he was friends with [Appellant]'s son and had been to their house.
>
> Both witnesses corroborated the facts of the fight during trial. Rivera testified that he went to the Neffsville Community Park on September 23, 2016 at around 9:30 p.m. with Turner to fight Jeremy Alston Jr.  When Rivera, Turner, and two others arrived at the park, it was dark since the only light in the area was across the parking lot.  They waited in the parking lot since it was the location the two groups had planned to meet.  Then, Rivera testified that two older men—instead of Jeremy Alston, Jr.—and two younger kids "walked out of nowhere" to meet them at the parking lot.  Rivera stated that he immediately recognized [Appellant] as Jeremy Alston, and the two kids even though it was dark.  After some words were exchanged, [Appellant] asked Rivera, Turner, and their friends if anyone brought a gun.  They all claimed they did not have any weapons, and at that point, [Appellant] pulled out a gun from his waistband.  When Rivera observed the firearm, he immediately grabbed his phone to call his mom.  Rivera testified that [Appellant] thought Rivera was calling the police, which caused [Appellant] to slap the phone out of Rivera's hand.  Immediately thereafter, [Appellant] "pistol whipped" Rivera right below his left eye.  The fight ensued at that point, but everyone finally dispersed after [Appellant] fired a shot into the air.  Rivera reported the incident to the police on September 26, 2016.  He

claimed that he did not immediately to go to the police because he was afraid of the repercussions. Rivera's testimony continued with the devastating injury sustained by the vicious blow to the face by [Appellant] that led to his face being removed from the front of his skull for the purpose of surgery to repair the damage done by the "pistol whipping."

Next, Jequan Turner was called by the Commonwealth to supplement and corroborate Rivera's testimony. Turner testified that he went to [the park] with Pablo Rivera, Davey Swinehart, and Luis Alva to settle a problem with Jeremy Alston Jr. He also testified to the poor lighting in the park; that they met up with four individuals in the parking lot; that he recognized [Appellant] as Jeremy Alston; that [Appellant] asked if they had a gun; that [Appellant] pulled out his own handgun; and that he observed [Appellant] strike Rivera with a gun in the face. To this point, Turner's testimony clearly confirmed the credible testimony of Rivera as to the initial meeting and the attack. Turner also testified that after Rivera got hit with the gun, a scuffle broke out and [Appellant] kicked Turner while he was on the ground.

During direct testimony, it was discovered that Turner had been adjudicated for theft offenses in 2014 but there was some confusion of whether he was still on supervision for it. Turner had clearly turned 21 before testifying (his 21st birthday was on the day of trial), and based on the law, he would not have been on juvenile probation for a seven-year-old retail theft adjudication; however, without an objection by the Commonwealth, [trial] counsel was able to continue his cross-examination to minimize Turner's testimony. Based upon this evidence, [trial counsel] questioned the credibility of Turner by crossing him on whether he had been given a special deal on his probation to testify against [Appellant]. Turner claimed that he did not have preferential treatment for testifying. This line of questioning was intended to support the defense's theory that the real assailant was [Appellant]'s son, and that Turner lied to detectives to obtain better treatment for his own sentence. Then, during closings, [trial counsel] again attacked Turner's credibility by arguing that Turner never even saw [Appellant] the night of the fight but changed his story to benefit himself since he was on probation. Despite attacking Turner's credibility on that issue, [trial counsel] failed to request a *crimen falsi* jury instruction. [Appellant] was ultimately found guilty of aggravated assault, firearms not to be carried without a license,

and recklessly endangering another person but was acquitted of simple assault, and the terroristic threats count was dismissed before jury deliberations.

PCRA Court Opinion, 8/4/21, at 2-4 (cleaned up; record citations omitted). The record also reflects that Rivera underwent surgery for his injuries in which three metal plates and nineteen screws were inserted into his face to repair fractured bones. Photographs of his injuries before and after surgery were admitted into evidence.

On August 20, 2018, the trial court sentenced Appellant to an aggregate term of 5½—12 years' imprisonment. Appellant filed timely post-sentence motions, which the trial court denied on September 21, 2018. Appellant did not file a direct appeal. On October 4, 2019, Appellant filed a timely *pro se* PCRA petition in which he alleged that trial counsel was ineffective during trial because he failed to request a jury instruction that Turner's theft adjudications constituted *crimen falsi*. Appellant subsequently filed an amended PCRA petition through counsel. On May 4, 2021, the PCRA court held an evidentiary hearing during which trial counsel testified.[2] In an opinion and order dated August 4, 2021, the court denied PCRA relief.

On September 3, 2021, through PCRA counsel, Appellant filed a timely notice of appeal to this Court. On September 13, 2021, the PCRA Court

---

[2] We will detail defense counsel's testimony during our discussion below of Appellant's claim of ineffective assistance.

ordered Appellant to submit a Pa.R.A.P. 1925 concise statement of errors complained of on appeal.

On September 20, 2021, following a **Grazier**[3] hearing, the PCRA court granted Appellant's request to proceed *pro se* in this appeal. The court also extended Appellant's deadline for filing a Rule 1925 statement until November 4, 2021. On November 3, 2021, Appellant filed a *pro se* Rule 1925 statement. On November 14, 2021, the PCRA court issued a Rule 1925 opinion incorporating its August 4, 2021 opinion by reference.

Appellant raises two issues in this appeal, which we restate for purposes of clarity and brevity: (1) whether trial counsel was ineffective for failing to request a *crimen falsi* jury instruction relating to Turner's theft adjudications; and (2) whether PCRA counsel was ineffective for failing to raise trial counsel's failure to file a direct appeal and failure to impeach Turner's credibility during his testimony by suggesting that Turner hoped to curry favor with the Commonwealth by testifying against Appellant.

> When reviewing the propriety of an order pertaining to PCRA relief,
>
> we consider the record in the light most favorable to the prevailing party at the PCRA level. This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. However, we afford no such deference to the post-conviction

---

[3] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

court's legal conclusions. We thus apply a *de novo* standard of review to the PCRA [c]ourt's legal conclusions.

***Commonwealth v. Diaz***, 183 A.3d 417, 421 (Pa. Super. 2018).

Appellant raises two claims of ineffective assistance of counsel. A petitioner who alleges ineffective assistance

> will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.[A.] § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." ***Commonwealth v. Colavita***, 993 A.2d 874, 886 (Pa. 2010) (citing ***Strickland v. Washington***, 466 U.S. 668, 687 (1984)). In Pennsylvania, we have refined the ***Strickland*** performance and prejudice test into a three-part inquiry. ***See Commonwealth v. Pierce***, 786 A.2d 203, 213 (Pa. 2001). Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. ***Commonwealth v. Ali***, 10 A.3d 282, 291 (Pa. 2010).

***Commonwealth v. Spotz***, 84 A.3d 294, 311-12 (Pa. 2014). Prejudice, in the context of ineffective assistance claims, requires proof of a reasonable probability that but for counsel's error, the outcome of the proceeding would have been different. ***Commonwealth v. Kimball***, 724 A.2d 326, 331 (Pa. 1999). The petitioner's failure to satisfy any of the three prongs requires rejection of his ineffective assistance claim. ***Commonwealth v. Ly***, 980 A.2d 61, 74 (Pa. 2009).

Appellant first argues that trial counsel was ineffective for failing to request a *crimen falsi* instruction based on Turner's theft adjudications. "Crimes involving dishonesty or false statement [are] commonly referred to as *crimen falsi* crimes, for purposes of impeaching a witness's credibility." ***Commonwealth v. Washington***, 269 A.3d 1255, 1264 (Pa. Super. 2022) (*en banc*). When there is evidence that a witness has previously been convicted of a *crimen falsi* offense, "the jury should [be] instructed regarding its relevancy and the use which [can] be made of it in determining [the witness's] credibility." ***Commonwealth v. LaMassa***, 532 A.2d 450, 452 (Pa. Super. 1987).

Appellant refers us to ***Commonwealth v. Cole***, 227 A.3d 336 (Pa. Super. 2020), which held that a PCRA petitioner was entitled a new trial because his attorney failed to request a *crimen falsi* instruction based on a Commonwealth witness's prior convictions for retail theft. The PCRA court in ***Cole*** determined that the lack of a *crimen falsi* instruction did not prejudice the petitioner, because the trial court provided a general instruction concerning witness credibility and also explained *crimen falsi* to the jury. ***Id.*** at 342. This Court disagreed. We explained that the general instructions regarding witness credibility were not sufficient to inform the jury about the specific issue of *crimen falsi*. ***Id.*** We also found that the record did not demonstrate that the trial court explained the concept of *crimen falsi* when the witness testified:

> The only statement to which the court could be referring was a ruling on defense counsel's objection to the Commonwealth's asking Ms. Hayden why she was "doing these retail thefts." . . . In overruling the objection, the court remarked, "It's fair background for the witness's credibility." . . . The court did not explain, in this statement, the relevancy of Ms. Hayden's *crimen falsi* offenses, []or instruct the jury on how that evidence could be considered in assessing her credibility.

***Id.*** at 342-43. Furthermore, the absence of a *crimen falsi* instruction prejudiced the petitioner, since the witness was the only witness who provided direct evidence of the petitioner's specific intent to kill the victim, making her testimony critical to the Commonwealth's case. Furthermore, the witness's credibility had been severely compromised during trial, because it was shown that she was a crack addict, had prior *crimen falsi* convictions, was incarcerated for committing another crime involving dishonesty, and might have been testifying against the petitioner to satisfy drug dealers who wanted the petitioner convicted. ***Id.*** at 340-41. Had the jury been instructed that the witness's convictions constituted a basis for discounting her testimony, there is a reasonable probability that the petitioner would have been convicted of a lesser degree of murder or acquitted of homicide, robbery, and/or criminal conspiracy. ***Id.*** at 341.

In the present case, Appellant's *crimen falsi* claim satisfies the first two prongs of the test for ineffectiveness, but not the third. The PCRA court held that Appellant satisfied the first prong, arguable merit, reasoning:

> [T]he Commonwealth opened the door to the *crimen falsi* adjudication by [Turner's direct testimony . . . [Turner] testified that he was still on probation for his adjudication but was not

> receiving any preferential probation treatment to testify in this case. []Turner's adjudication was then utilized by [defense] counsel to support the theory that . . . Turner's probation status gave him a motive to lie and misidentify the assailant as [Appellant]. [Counsel] referenced . . . Turner's convictions two separate times during trial to support that theory. Since a prior *crimen falsi* conviction was elicited during testimony, [Appellant] was entitled to a jury instruction to direct the jurors on how to use that evidence in assessing . . . Turner's credibility.

PCRA Court Opinion, 8/4/21, at 6-7. Based on **Cole**, we agree that Appellant's claim has arguable merit.

Next, the PCRA court indicated, but did not definitively rule, that counsel lacked a reasonable excuse for failing to request a *crimen falsi* instruction. Counsel testified during the PCRA evidentiary hearing that he elected not to request an instruction because his strategy was to keep the defense simple, and legal terms such as "*crimen falsi*" would have confused the jury. *Id.* at 5, 9. Counsel also claimed that his strategy was to exploit weaknesses in Turner's testimony, which he accomplished by highlighting Turner's theft adjudications, inconsistencies in Turner's statements to the police, and Turner's reluctance to report the fight for months after the incident. *Id.* at 9. The court stated,

> While all the reasons that [counsel] offers are logical, they may not be sufficient to satisfy **Cole**. According to **Cole**, it is always beneficial to request the *crimen falsi* instruction and there can be no basis for failing to request the jury instruction, therefore, the second prong of the [ineffectiveness] test may well have been established by [Appellant].

PCRA Court Opinion, 8/4/21, at 9. While the court could have been more definitive, it suggested that counsel lacked a reasonable basis under **Cole** for

failing to request a *crimen falsi* instruction. For purposes of this memorandum, we assume that the court concluded that counsel lacked a reasonable excuse for failing to seek a *crimen falsi* instruction, and we hold that this conclusion was correct.

The third prong of the ineffectiveness standard, prejudice, is where Appellant's argument runs aground. In two PCRA appeals subsequent to *Cole*, we held that although defense counsel had no reasonable basis for failing to request a *crimen falsi* instruction, there was no prejudice to the petitioner and thus no right to relief. *Commonwealth v. McCoy*, 2021 WL 1616221 (Pa. Super. 2021) (unpublished memorandum)[4]; *Commonwealth v. Robinson*, 2020 WL 1491362 (Pa. Super. 2020) (unpublished memorandum). In *Robinson*, the petitioner argued that defense counsel was ineffective for failing to seek a *crimen falsi* instruction where a Commonwealth witness who saw the petitioner murder another person had multiple convictions for crimes of dishonesty, including theft, burglary and related offenses. We concluded that the failure to seek an instruction, while unreasonable, did not prejudice the petitioner, because defense counsel brought up the witness's crimes during his opening statement, during cross-examination of the witness, and during closing argument. *Id.*, 2020 WL at 1491362, *11. In *McCoy*, the petitioner argued that defense counsel was

---

[4] We may cite all unpublished decisions of this Court filed after May 1, 2019 for their persuasive value. Pa.R.A.P. 126(b).

ineffective for failing to seek a *crimen falsi* instruction relating to a Commonwealth witness who had convictions for robbery and retail theft. We held that the petitioner's case was distinguishable from **Cole** because the evidence adduced during trial (the arresting officer's and victim's testimony and forensic evidence obtained from a vehicle occupied by the petitioner) furnished overwhelming evidence of guilt, and because the jury heard about the witness's crimes of dishonesty during both her testimony and closing argument. *Id.*, 2021 WL 1616221, *5-6. Accordingly, the failure to seek a *crimen falsi* instruction did not prejudice the petitioner.

As in **McCoy** and **Robinson**, there was ample evidence of Appellant's guilt other than from Turner's testimony. The PCRA court aptly reasoned:

> Turner was [only] one of two witnesses to testify to the aggravated assault committed by [Appellant]. [Turner's] testimony was merely provided to corroborate the testimony of the victim [Rivera]. There was no issue with the credibility of the victim, and he testified that he had previously met [Appellant] and was positive that [Appellant] was the individual that struck him. There was no testimony that indicated that the victim was unable to remember the events of the attack or unable to perceive what took place due to his injuries. The victim was positive that [Appellant] was the assailant of the aggravated assault. Any credibility questions of Turner were clearly minimized by the fact that he provided a similar story as the victim, who had no credibility concerns.
>
> Turner also suffered significantly less credibility questions than the witness in **Cole**. There was no evidence that Turner was suffering from any drug addictions. He also testified that he was not promised any preferential treatment for his testimony. In fact, it is likely that Turner was not even on probation at the time of trial, or his supervision was completed because he was now 21.

PCRA Court Opinion, 8/4/21, at 10-11. Furthermore, counsel vigorously cross-examined Turner on a series of subjects designed to impugn his credibility, including his prior adjudication for retail theft, his failure to report the altercation with Appellant to the police, and inconsistences between his belated report to the police and his trial testimony. N.T., 6/11/18, at 106-18. During closing argument, counsel continued to attack Turner's credibility on the same grounds, including his prior adjudication. *Id.* at 157-58.

Given the abundant evidence of Appellant's guilt other than Turner's testimony, and given counsel's attempt to undermine Turner's credibility with, *inter alia*, his prior adjudication for retail theft, we agree with the PCRA court that counsel's failure to request a *crimen falsi* instruction did not prejudice Appellant. Accordingly, Appellant cannot obtain relief on this claim of ineffective assistance.

Next, Appellant contends that PCRA counsel was ineffective for failing to argue that trial counsel was ineffective for (1) failing to file a direct appeal and (2) failing to impeach Turner's credibility during his testimony by suggesting that Turner had a motive for testifying against Appellant, specifically, a subjective belief that he would receive favorable treatment with regard to his juvenile probation. Appellant waived the first issue by failing to raise it in his *pro se* Rule 1925 statement, and he waived the second issue by failing to develop it in his *pro se* appellate brief.

As summarized above, on September 13, 2021, following Appellant's appeal of the order denying PCRA relief, but while he was still represented by counsel, the PCRA court ordered him to submit a Rule 1925 statement. On September 20, 2021, following a *Grazier* hearing, the PCRA court granted Appellant's request to proceed *pro se* in this appeal, and it extended Appellant's deadline for filing a *pro se* Rule 1925 statement until November 4, 2021. On November 3, 2021, Appellant filed a *pro se* Rule 1925 statement.

Our Supreme Court recently held that a PCRA petitioner may, after a PCRA court denies relief, and while acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal. *Commonwealth v. Bradley*, 261 A.3d 381, 401 (Pa. 2021). Under *Bradley*, Appellant was entitled to raise claims of PCRA counsel's ineffectiveness in this appeal, since it was his first opportunity to do so.

By representing himself, however, Appellant undertook the responsibility to comply with basic rules of appellate procedure. *See Commonwealth v. Blakeney*, 108 A.3d 739, 766 (Pa. 2014) ("although the courts may liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon a litigant").[5] Appellant failed to satisfy

_____

[5] In addition, while certain omissions by counsel constitute ineffectiveness *per se*, such as the failure to file any Rule 1925 statement, this rule of *per se* ineffectiveness applies only to represented parties and not to *pro se* criminal
*(Footnote Continued Next Page)*

this responsibility in his challenges to PCRA counsel's ineffectiveness. He waived his first claim—PCRA counsel was ineffective for failing to challenge trial counsel's failure to file a direct appeal—by failing to include this issue in his Rule 1925 statement. *Commonwealth v. Jones*, 191 A.3d 830, 834 (Pa. Super. 2018) (defendant waived appellate review of claim that there was insufficient evidence to prove first-degree murder by failing to include this claim in Rule 1925 statement). He waived his second claim—PCRA counsel neglected to argue that trial counsel was ineffective for failing to impeach Turner's credibility during his testimony by suggesting that Turner had a motive for testifying against Appellant—by completely failing to develop this argument in his brief with anything more than boilerplate assertions of ineffectiveness. *Commonwealth v. Plante*, 914 A.2d 916, 924 (Pa. Super. 2006) (failure to develop an argument with citation to, and analysis of, relevant authority waives the issue on review).

_____

*(Footnote Continued)* _____

litigants such as Appellant. *See*, *e.g.*, Pa.R.A.P. 1925(c)(3) ("If an appellant represented by counsel in a criminal case was ordered to file and serve a Statement and either failed to do so, or untimely filed or served a Statement, such that the appellate court is convinced that counsel has been per se ineffective, and the trial court did not file an opinion, the appellate court may remand for appointment of new counsel, the filing or service of a Statement *nunc pro tunc*, and the preparation and filing of an opinion by the judge").

For these reasons, we affirm the PCRA court's order denying Appellant relief on his PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/25/2022