**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN BLACKSTON | : | |
| | : | |
| Appellant | : | No. 24 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 5, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002035-2020

BEFORE:  LAZARUS, P.J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:                    **FILED DECEMBER 3, 2024**

Appellant, John Blackston, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury trial convictions for first-degree murder, attempted first-degree murder, aggravated assault, firearms not to be carried without a license, and possession of an instrument of crime.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On August 7, 2020, Christopher King and Jennie Luckie left home at approximately 4:00 a.m. to buy cigarettes.  Upon their return, Mr. King parked his car, and the two remained in the car while Mr. King phoned his brother.  Mr. King then observed a white Nissan Rogue drive down the street towards him, stopping next to his vehicle.  Mr. King recognized Appellant as the driver.

_____

[1] 18 Pa.C.S.A. §§ 2502(a), 901(a), 2702(a)(1), 6106(a)(1), and 907(a), respectively.

Before Mr. King could react, Appellant pointed a gun at him and opened fire, shooting Mr. King and Ms. Luckie several times. Mr. King managed to drive away from the scene but had to pull over several blocks away.

At approximately 4:30 a.m., police officers were dispatched to 9th and Chestnut Streets in Trainer Borough, Delaware County. Officer Gary Richardson observed a red Nissan Altima stopped in the westbound lane. As he approached, he saw Mr. King in the driver's seat, and Ms. Luckie in the passenger seat. Both had suffered multiple gunshot wounds. Mr. King attempted to exit the vehicle, but he immediately collapsed on the street before being taken by ambulance to the hospital. Ms. Luckie was pronounced dead at the scene. The shooting was captured on video surveillance, which corroborated Mr. King's account of the events.

During the subsequent investigation, Mr. King identified Appellant, who he knew personally, as the shooter. Mr. King had previously had a romantic relationship and two children with a woman named Lasheira Johnson before he was incarcerated in early 2015. During that time, Ms. Johnson began a romantic relationship with Appellant. Mr. King and Appellant met after Mr. King's release from prison. In September 2015, the two men engaged in a physical altercation which resulted in Mr. King's permanent blindness in one eye.[2] Appellant had a good relationship with Mr. King and Ms. Johnson's children, although the children were removed from her custody at some point

_____

[2] Appellant was criminally charged in connection with that altercation, but after Mr. King failed to testify, the case was ultimately dismissed.

and placed in foster care. Erin Wiggle served as their foster parent.

As the case proceeded to trial, both parties filed motions *in limine*. Relevant to the instant appeal, on February 10, 2022, the Commonwealth filed a motion requesting that the defense be precluded from referencing several prior convictions of Mr. King's, including a 2015 conviction for failure to register as a sex offender with the Pennsylvania State Police. The trial court granted this motion.

On April 4, 2022, the Commonwealth filed a motion seeking to exclude the testimony of Ms. Wiggle. The motion requested that Ms. Wiggle be prohibited from testifying that (1) she was the foster mother to Ms. Johnson's children, and (2) that Appellant was a "father figure" to the children, that he visited with the children at her home, and that he was considering becoming their legal guardian. Following oral argument, the trial court entered an order granting the motion in part. Specifically, the order prohibited Ms. Wiggle from testifying about Appellant's visits to her house to see the children, Appellant's relationship with the children, and the fact that the children were in foster care.

Following trial, a jury convicted Appellant of the above-mentioned crimes. On December 5, 2022, the trial court sentenced Appellant to an aggregate term of life imprisonment without parole. Appellant timely filed a notice of appeal on December 19, 2022. On December 22, 2022, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement, and on

January 12, 2023, Appellant timely complied.[3]

On appeal, Appellant raises the following issues for review:

> Should the judgment of conviction be vacated where the [trial court] improperly:
>
>> Precluded Appellant from impeaching the Commonwealth's sole inculpatory witness with evidence of his conviction for knowingly failing to register as a sexual offender, a *crimen falsi* offense subject to mandatory admission; and
>>
>> Precluded Appellant from presenting testimonial evidence showing that the witness was motivated to falsely implicate Appellant, an antagonist of the witness who had begun supplanting the witness as a parental figure to the witness' own children?

(Appellant's Brief at 3).

Both of Appellant's issues concern the trial court's evidentiary rulings. Our standard of review of such decisions is well settled: "When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review." ***Commonwealth v. Belani***, 101 A.3d 1156, 1160 (Pa.Super. 2014). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion." ***Commonwealth v. Cook***, 231 A.3d 913, 919 (Pa.Super. 2020) (citation omitted). Rather, an abuse of discretion only occurs where the trial court has committed an error of law, or "when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-

_____

[3] Following the filing of Appellant's Rule 1925(b) statement, this Court permitted remand for the appointment of new counsel.

will." *Id.* (citation omitted). Further, to the extent we are required to review the trial court's conclusions of law, "our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Wilmer**, 648 Pa. 577, 583, 194 A.3d 564, 567 (2018).

In Appellant's first issue, he argues that the court improperly precluded him from presenting evidence that Mr. King had been previously convicted for failing to register as a sex offender. Appellant claims that if a *crimen falsi* conviction is less than ten years old, its admission is mandatory. Although by definition, *crimen falsi* is a crime of dishonesty or involving a false statement, Appellant suggests that Pennsylvania courts have adopted a more expansive definition of *crimen falsi* that should encompass offenses that do "not necessarily involve any deception," including the failure to register as a sex offender. Appellant further suggests that because Mr. King was the Commonwealth's sole eyewitness and the ability to impeach his testimony was of paramount importance, he was prejudiced by the ruling. We disagree.

The Pennsylvania Rules of Evidence provide that a witness may be impeached by evidence of a criminal conviction:

> **Rule 609. Impeachment by Evidence of a Criminal Conviction**
>
> **(a) In General.** For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement.

Pa.R.E. 609. This Court has explained:

"[C]rimes involving dishonesty or false statement [are] commonly referred to as *crimen falsi* crimes, for purposes of impeaching a witness's credibility." **Commonwealth v. Moser**, 999 A.2d 602, 607 n.6 (Pa.Super. 2010), *appeal denied*, 610 Pa. 595, 20 A.3d 485 (2011). **See also Commonwealth v. E. Jones**, 334 Pa. 321, 323, 5 A.2d 804, 805 (1939) (stating term *crimen falsi* involves element of falsehood and includes everything which has tendency to injuriously affect administration of justice by introduction of falsehood and fraud).

When deciding whether a crime is *crimen falsi*, we initially "examine the essential elements of the offense to determine if the crime is inherently *crimen falsi*—whether dishonesty or false statement are a necessary prerequisite to commission of the crime." **Commonwealth v. Davis**, 17 A.3d 390, 395-96 (Pa.Super. 2011), *appeal denied*, 611 Pa. 678, 29 A.3d 371 (2011). "[I]f the crime is not inherently *crimen falsi*, this Court then inspects the underlying facts that led to the conviction to determine if dishonesty or false statement facilitated the commission of the crime. The burden of proof is upon the party offering the conviction during cross-examination." **Id.** at 396.

**Commonwealth v. Washington**, 269 A.3d 1255, 1264-65 (Pa.Super. 2022) (*en banc*), *appeal denied*, ___ Pa. ___, 283 A.3d 1249 (2022). **See also Commonwealth v Cole**, 227 A.3d 336, 340 (Pa.Super. 2020) (noting that burglary and crimes of theft are *crimen falsi* convictions). **Compare Commonwealth v. Grimm**, 378 A.2d 377, 380 (Pa.Super. 1977) (explaining that convictions showing assaultive or disorderly conduct are not *crimen falsi* because they do not involve false statement or dishonesty and are completely irrelevant to issue of the witness' veracity).

Instantly, the trial court explained its rationale for precluding evidence of Mr. King's 2015 conviction for failure to register as a sexual offender, as

follows:[4]

> In deciding whether a particular offense is *crimen falsi*, the court must consider both the elemental aspects of that offense and the conduct of the defendant. First, the [c]ourt examines the essential elements of the offense to determine if the crime is inherently *crimen falsi* or whether dishonesty or false statement are a prerequisite for the commission of the crime. Second, if the crime is not inherently *crimen falsi*, the court reviews the underlying facts of the crime to determine if dishonesty or false statement facilitated the commission of the crime.

---------------------------------------------

[4] At the time Mr. King pled guilty to failing to register, the relevant statute provided as follows:

**§ 4915.1. Failure to comply with registration requirements**

<Act 2018, Feb. 21, P.L. 27, No. 10, § 2, amended this section effective immediately, but applicable to an individual who commits an offense on or after Dec. 20, 2012. This amendment was incorporated into the Feb. 21, 2018, version of this section.>

**(a) Offense defined.--**An individual who is subject to registration under 42 Pa.C.S. § 9799.13 (relating to applicability) commits an offense if he knowingly fails to:

(1) register with the Pennsylvania State Police as required under 42 Pa.C.S. § 9799.15 (relating to period of registration), 9799.19 (relating to initial registration) or 9799.25 (relating to verification by sexual offenders and Pennsylvania State Police);

(2) verify his address or be photographed as required under 42 Pa.C.S. § 9799.15, 9799.19 or 9799.25; or

(3) provide accurate information when registering under 42 Pa.C.S. § 9799.15, 9799.19 or 9799.25.

18 Pa.C.S.A. § 4915.1 (effective Dec. 20, 2012 through Feb. 20, 2018).

> Failing to Register with the Pennsylvania State Police is not a crime of dishonesty or false statement. [Mr.] King did not lie about where he was living or anything of that sort. Rather, [Mr.] King simply failed to register his new address when he moved. These underlying facts show that [Mr.] King was not dishonest nor made a false statement when failing to register. Therefore, [Mr.] King's guilty plea may not be admitted for the purpose of impeaching [Mr.] King's credibility.

(Supplemental Trial Court Opinion, 1/2/24, at 6-7) (internal citations omitted).

Here, Appellant has provided us no Pennsylvania authority to support his contention that failing to register as a sex offender constitutes a *crimen falsi* offense. Although Appellant cites numerous decisions of other states and federal courts, including those outside of the Third Circuit, to support his contention that the definition of *crimen falsi* should be expanded to include the failure to register as a sex offender, these decisions are not binding authority. ***See Commonwealth v. Lang***, 275 A.3d 1072, 1083 (Pa.Super. 2022) (explaining that decisions of federal courts, as well as those from "sister states" are not binding on this Court but may be used as persuasive authority).

We agree with the trial court's reasoning that failing to register is not inherently a crime of dishonesty; further, Mr. King's failure to register his new address with the Pennsylvania State Police did not involve an act of dishonesty or false statement to facilitate that offense. ***See Washington, supra***. Thus, we see no reason to disturb the court's evidentiary ruling. ***See Belani, supra***.

In Appellant's second issue, he contends that the trial court improperly

- 8 -

excluded evidence that Mr. King had a motive to falsely implicate Appellant in the shooting. According to Appellant, the two men had a history of antagonism, including a physical altercation during which Appellant partially blinded Mr. King. Appellant also asserts that Mr. King resented Appellant for becoming close to his children, serving as a father figure and bringing them presents. Appellant claims he sought to introduce the testimony of Ms. Wiggle to establish these facts as evidence of Mr. King's alleged bias, but the trial court denied the motion as improper character evidence. Appellant insists that the trial court erred in granting the Commonwealth's motion, and this Court must grant relief. We disagree.

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence" and "(b) the fact is of consequence in determining the action." Pa.R.E. 401. All relevant evidence is admissible, except otherwise provided by law; evidence that is not relevant is not admissible. Pa.R.E. 402. Relevant evidence may be excluded if its probative value is outweighed by one or more of the following: "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

The Pennsylvania Rules of Evidence govern the admission of character evidence as follows:

> **Rule 404. Character Evidence; Other Crimes, Wrongs, or Acts**
>
> **(a) Character Evidence.**

(1) *Prohibited Uses.* Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

(2) *Exceptions for a Defendant or Victim in a Criminal Case.* The following exceptions apply in a criminal case:

(A) a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it;

(B) subject to limitations imposed by statute a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted the prosecutor may:

(i) offer evidence to rebut it; and

(ii) offer evidence of the defendant's same trait; and

(C) in a homicide case, the prosecutor may offer evidence of the alleged victim's trait of peacefulness to rebut evidence that the victim was the first aggressor.

(3) *Exceptions for a Witness.* Evidence of a witness's character may be admitted under Rules 607, 608, and 609.

\* \* \*

Pa.R.E. 404.

**Rule 405. Methods of Proving Character**

**(a) By Reputation**. When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation. Testimony about the witness's opinion as to the character or character trait of the person is not admissible.

\* \* \*

- 10 -

**(b) By Specific Instances of Conduct.** Specific instances of conduct are not admissible to prove character or a trait of character, except:

* * *

(2) In a criminal case, when character or a character trait of an alleged victim is admissible under Pa.R.E. 404(a)(2)(B) the defendant may prove the character or character trait by specific instances of conduct.

Pa.R.E. 405(a), (b)(2). "Evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged." *Commonwealth v. Lauro*, 819 A.2d 100, 109 (Pa.Super. 2003), *appeal denied*, 574 Pa. 752, 830 A.2d 975 (2003) (citation omitted). Further, the testimony must be "established by testimony of witnesses as to the community opinion of the individual in question, not through specific acts or mere rumor." *Id.*

On the other hand, "[e]vidence of bias, interest, or corrupt motive" is generally admissible on cross-examination, and the decision to permit or limit such examinations is within the "sound discretion of the trial court." *Commonwealth v. Murray*, 623 Pa. 506, 542, 83 A.3d 137, 159 (2013) (citations omitted).

> Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a [witness's] like, dislike, or fear of a party, or by the [witness's] self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to

- 11 -

assess all evidence which might bear on the accuracy and truth of a [witness's] testimony.

**Id.** (quoting **Commonwealth v. Abu-Jamal**, 521 Pa. 188, 204, 555 A.2d 846, 853 (1989)).

Instantly, Appellant contends that Ms. Wiggle's testimony was not character evidence, but evidence that would illustrate the potential bias of Mr. King. The trial court rejected this assertion and decided that Appellant was attempted to "back door" improper character testimony into evidence. The court explained:

> In **Commonwealth v. Van Horn**, 797 A.2d 983 (Pa.Super. 2002), [the defendant] was on trial for rape and other related offenses. At trial he desired to proffer testimony from several of his relatives. **The proffered testimony was that defendant had a good relationship with the victim. The Superior Court concluded that such testimony was not permitted as it constituted improper character testimony. Id.**, at 986-87 (Emphasis added). The relatives' testimony on their experiences with defendant and their perceived relationship between victim and defendant was not testimony regarding defendant's reputation in the community. Thus, it was not admissible. **Id.** at 987.
>
> [Appellant's] visits to [Ms.] Wiggle's house to see [Mr.] King's children, the fact that he was "a father figure" to them, and that he was considering becoming a legal guardian of them, are praiseworthy traits and propensities. They clearly fit into the definition of character evidence[.] As [the] defendant's relatives in **Van Horn** could not testify as to the defendant's good relationship with the victim, [Ms.] Wiggle was properly prohibited from testifying, in this matter, to [Appellant's] good relationship with [Mr. King's children]. Furthermore, to allow testimony regarding the occasions that [Appellant] visited [Ms.] Wiggle's house to see [Mr.] King's children involves testimony as to specific instances of conduct. Such testimony runs contrary to

- 12 -

Pa.R.E. 405(b). Accordingly, such testimony is not permitted.

This [c]ourt notes that [Appellant] presented an offer of proof for [Ms.] Wiggle's testimony at the June 7, 2022 hearing. [Appellant] contended that the testimony was not being introduced for the purpose of proving character. He noted that this [c]ourt permitted the Commonwealth to introduce evidence concerning the 2015 altercation between [Appellant] and [Mr.] King in accordance with Pa.R.Crim.P. 404(b). [Appellant] posited that, at trial, the Commonwealth would present the 2015 altercation between him and [Mr.] King to establish [Appellant's] disdain for [Mr.] King. Consequently, the Commonwealth would advance [Appellant's] disdain as a motive for [Appellant] to kill [Mr.] King.

[Appellant's] theory was that "motive cuts both ways." [Appellant] posited that [Mr.] King harbored reciprocal disdain for him. [Mr.] King's disdain for [Appellant] served as motive to fabricate testimony. Consequently, [Mr.] King's identification of [Appellant] as his and [Ms.] Luckie's shooter lacked credibility. According to [Appellant], evidence showing that [Appellant] was a father figure to [Mr.] King's children, that he visited the children, and that he wanted to become their legal guardian, was instrumental to his theory that [Mr.] King harbored disdain for him. He wanted to present this theory to the jury. [Ms.] Wiggle's testimony would serve that purpose.

(Trial Court Opinion, 3/17/23, at 16-17) (some citations omitted).

Ultimately, the trial court concluded that Appellant had advanced no convincing legal authority that Ms. Wiggle's testimony was proper character evidence. Moreover, the court decided that Ms. Wiggle's proffered testimony was not relevant in any event. (*See id.* at 18). Specifically, the court concluded that Appellant's good relationship with Mr. King's children did not have a tendency to make it more probable that Mr. King would be angry with Appellant. (*Id.* at 21). Furthermore, the court decided that Ms. Wiggle's

proffered testimony was not connected to any fact which was "of consequence in determining the action[.]" (*Id.*) The court explained:

> For the purposes of Pa.R.E. 401(b), the logical path [Appellant] wanted this [c]ourt to draw was the following: (1) that [Appellant] had a "father figure" relationship with [Mr.] King's children; (2) that relationship made [Mr.] King angry; (3) [Mr.] King wanted to get rid of [Appellant]; (4) being shot several times and having his girlfriend killed was seen by [Mr.] King an opportunity to send [Appellant] to prison; (5) [Mr.] King, having survived the shooting, lied to police during the course of the investigation by blaming [Appellant] instead of the true perpetrator; (6) [Mr.] King lied under oath at trial, blamed [Appellant] for shooting him and killing his girlfriend, and allowed the true perpetrator to go free. The theory proposed by [Appellant] does not demonstrate the relevancy of [Ms.] Wiggle's testimony.

(*Id.* at 21-22).

Even if Ms. Wiggle's proffered testimony did not constitute an attempt to "back door" improper character evidence, we see no reason to disrupt the court's evidentiary ruling. ***See Belani, supra***. On this record, we cannot say that the court abused its discretion in deciding that the proffered evidence of bias was not relevant to whether Appellant was the perpetrator of the shooting. ***See*** Pa.R.E. 401; ***Murray, supra***. Thus, Appellant is not entitled to relief on this issue. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/3/2024